ORRIN L. JENKS ET AL. V. GEORGE S. COLWELL ET AL.

*Conditional sale—Retention of title as security—Fixtures—Good-faith purchaser—Trover and conversion.*

1. A millwright contracted to build a mill and furnish the necessary machinery for a fixed price, and afterwards purchased the machinery upon a contract, in which it was agreed that the title should not pass out of the vendors until fully paid for, nor should the machinery become a fixture by being annexed in any manner to the realty; and that the vendors should have the right to enter upon the premises upon which it was located, and take possession of the machinery, in case of non-payment. At the time of such sale the vendors had knowledge of the contract of the vendee, and the use to be made of the machinery ; and, on the guaranty that the machinery should be shipped on payment of the *down* payment agreed to be made by the vendee, such payment was made by the parties for whom he was building the mill, who had *no* knowledge of the retention by the vendors of the title to the machinery as aforesaid.

   *Held,* in an action of trover by the vendors against the owners of the mill for the value of the machinery, which had been placed in the mill under the contract, that a verdict should have been directed for the defendants, for the reason that the plaintiffs understood when they sold the machinery that it was purchased by the vendee for the purpose of attaching it to the realty of the defendants under a contract which bound him to do so, and with that knowledge obtained $500 of the defendants, and guaranteed the shipment of the machinery for the purpose above stated, without notice to or a knowledge on the part of the defendants that plaintiffs still claimed the title to the machinery.

2. Where the *undisputed* testimony of the plaintiffs in a case establishes a fact affecting their right to recover, it is error to submit such fact to the jury as a question in *dispute* under the testimony.

3. In this State, where the validity of *conditional* sales of personal property has been recognized, the right of the vendor to follow the property into the hands of third parties, or to sue them for its conversion, depends upon the *good faith* of the transaction ; and where the purchase is made from the vendee in good faith, and without notice, and under circumstances in which the original vendor must have known or contemplated that the property would be sold by his vendee, and incorporated into or made a

part of the freehold, his rights are subservient to those of the innocent purchaser. *Knowlton v. Johnson,* 37 Mich. 51; *Ingersoll v. Barnes,* 47 Id. 104.[1]

Error to St. Clair. (Stevens, J.) Argued April 14, 1887. Decided June 23, 1887.

Trover. Defendants bring error. Reversed. The facts are stated in the opinion.

*S. W. Vance (O'Brien J. Atkinson,* of counsel), for appellants.

*Elliott G. Stevenson,* for plaintiffs.

CHAMPLIN, J. On the third day of October, 1882, James A. Thompson entered into a contract with defendants to construct for them a mill building on their premises in Backusville, Alcona county, and place therein a certain steam-boiler and machinery. Thompson was to furnish all the labor and all the machinery enumerated in the contract, and pay the costs of its transportation. The defendants were to furnish all the lumber, timber, and materials for the building and machinery. They were to pay Thompson, $4,112, as follows: $1,000 at the execution of the contract, and the balance when the mill was completed and in good running order.

Thompson had worked for the plaintiffs for some years,— five or ten. He was a millwright by trade, and had worked in their shops, and also on the road selling machinery; and, being a millwright, he had permission from the plaintiffs to go at any time he could get a job outside, and then, when he came back again, he went to work for the plaintiffs, if he had not anything else to do. At the time of this contract with the plaintiffs he had not worked for them for a year or more.

After Thompson had entered into his contract with the

---

[1] See *Edwards v. Symons,* 65 Mich. 349 (head-note 3).

defendants he went to plaintiffs, who were doing business under the name of the Phœnix Iron Works, at Port Huron, and entered into a contract with them for the purchase of the machinery in question, agreeing to pay therefor $3,183.47,—$500 down, and the balance, $2,683.47, in 20 days, with interest, according to the condition of a promissory note executed by Thompson,—and when payment was fully made they agreed to execute to Thompson a bill of sale of the property. The contract contained this clause:

" It being expressly understood that the title of the said above-mentioned articles, machinery, etc., shall ·not pass out of the said Phœnix Iron Works until the full sum hereinafter mentioned shall be paid, as herein specified; that the same shall not become a fixture by being placed in any mill or other building, or by being annexed in any manner to the realty; and that said Phœnix Iron Works may at any time enter upon the premises upon which said property is located, and take possession of the same, upon a violation of any of the agreements herein contained; and that any money already paid thereon shall be considered as having been paid for the use of said property."

The instrument is sometimes designated as a receipt, and sometimes as a lease, and bears date November 15, 1882, and is signed by James A. Thompson. The plaintiffs knew at the time the instrument was executed what use Thompson was going to put the property to, and was told by Thompson what his arrangements were with defendants.

It appears that Thompson did not pay the $500 down upon the execution of the contract from his own hand, but it was obtained in this way: The Phœnix Iron Works sent the following telegram to defendants:

" We will guarantee shipment of machinery on receipt of $500;"—

To which defendants responded by telegraph: ·

" We will send you $500 when James A. Thompson orders us to do so."

Thompson then sent the following telegram:

" *George S. Colwell:* Send Phœnix Iron Works $500 as quick as possible to save delay.

" JAMES A. THOMPSON."

The machinery was thereupon shipped the day the contract between plaintiffs and Thompson bears date, namely, November 15. The machinery and boiler were placed by Thompson in the mill under his contract with defendants. The job was not completed by the time specified in that contract.

On December 15 defendants received a letter from plaintiffs, written on the thirteenth, which reads as follows:

" PORT HURON, MICH., December 13, 1882.
" COLWELL, McGREGOR & Co.,
" Harrisville,—

" *Gents:* Has Mr. Thompson informed you that the machinery shipped him was ours until paid for? We have no doubt he has told you. There is still due us on this machinery, belting, etc., at the date of shipment, $2,683.47, which should have been paid some days ago. As you expect to own this machinery, we thought it would make no difference to you how soon you paid for it. Let us hear from you by return mail how you feel about it, and when you expect to pay for it. We understand, of course, he has made the same arrangement with you for payment as he did with us.

" Awaiting your reply, we remain, yours, etc.,
"PHŒNIX IRON WORKS."

This letter was responded to by defendants on December 16, as follows:

"HARRISVILLE, MICH., December 16, 1882.
" PHŒNIX IRON WORKS,
" Port Huron, Mich.,—

" *Dear Sirs:* Yours of the 14th at hand, which gave us the first information we have received of any arrangement between you and Mr. Thompson. We have never known anything of you in our dealings with Mr. Thompson, and we have never expected to make any payments that are not ordered or sanctioned by him. There is nothing due Mr. Thompson until the job is completed.

" Yours truly,
" COLWELL, McGREGOR & Co."

Thompson claimed to have completed his contract, and left the mill, taking his tools, the latter part of December, and defendants then took possession, but claim that the mill was not completed according to contract, and that they went on and completed it at an expense of about $300, which they claimed the right to retain out of the balance due to Thompson on the contract. After some correspondence between the parties, Thompson sent to defendants the following letter:

"Port Huron, Mich., January 26, 1883.
"Colwell, McGregor & Co.,—
"*Gentlemen:* Yours of the 22d came duly to hand. Send balance my due to the Phœnix Iron Works, this city, and send me an itemized bill of my account. The tools have not yet arrived. ''ill you please make inquiry of them, and oblige,
"Yours respectfully,
"James A. Thompson."

Complying with request, defendants sent to the plaintiffs a draft, as follows:

"Harrisville, Mich., February 1, 1883.
"Pay to the order of Phœnix Iron Works, Port Huron, two thousand eighty-six and 3-100 dollars.
$2,086.03.                    Colwell, McGregor & Co."
"*To the Second National Bank, Detroit, Mich.*"

Which draft was accompanied, under the same envelope, by the following letter:

"Office of Colwell, McGregor & Co., Merchants,
"Harrisville, Mich., February 1, 1883.
"Messrs. Phœnix Iron Works,
"Port Huron, Mich.,—
"*Dear Sirs:* Inclosed find draft for $2,086.03, which is the balance due on the Jas. A. Thompson and Colwell, McGregor & Co. contract for building shingle-mill, under date of October 3, 1882, if we deduct nothing for loss of the use of the mill. Crowding the work as rapidly as we could, we lost the use of the mill about one month after January 1, 1883. We have deducted nothing for this damage to us, and, if the inclosed draft is accepted as payment in full, we shall

make no claim for damage; otherwise we do not waive our claim for damages, and, if there is any further controversy in regard to this matter, we reserve the right to claim and recover our damages for loss of use of mill, and any other damages to which we have been subjected, because the mill was not completed according to contract. We send the inclosed to you, per order of James A. Thompson, under date of January 26, 1883.

"Yours truly,
"COLWELL, McGREGOR & Co."

After this draft was received by the plaintiffs, the defendants denied that plaintiffs had any right or title to the property in question. The letter of date December 13 was the first notice or intimation that defendants had that plaintiffs had any claim upon the property. The testimony was conflicting as to the condition of the property at that time; as to whether it was then all in place in the mill ready for operation, or whether a portion of it had not then been put in place.

The circuit judge charged the jury as follows:

"Now, gentlemen, you are instructed that, by the terms of the written agreement executed by Thompson to the plaintiffs, which has been introduced in evidence, if you find that the same was executed as testified to, the title to the property would not pass from the plaintiffs to Thompson until such time as the terms of the agreement had been complied with and the plaintiffs paid the amount therein agreed upon; and this would be so notwithstanding they may have intrusted Thompson with the possession of it, unless it has been shown that, after they had so permitted the property to pass out of their hands, and under the control of Thompson, they knowingly allowed him to convert it and use it in such a manner, in carrying out his contract with the defendants, that the plaintiffs are estopped from asserting as against them their claim to the property. But the defendants, if they were informed of the character of plaintiffs' interest in the property, and that they had reserved the title therein. or were notified that the plaintiffs claimed ownership to the property, before all the property described in the declaration had been placed in the mill, they could not retain possession of such property as was subsequently placed therein, contrary

to the rights of the plaintiffs under their agreement with Thompson, and to take possession of the same in the event of his failure to pay them the amount of the purchase price of the property furnished by them. If the plaintiffs knew that the machinery in controversy, when it was delivered to Thompson, was to be taken to the county of Alcona, and there put into a shingle-mill on the lands of the defendants, and were silent in respect to their claim until the machinery was all on the ground and put in the mill, or attached to it, they are now estopped from claiming it as their property.

"In other words, if you are satisfied from the evidence that, the time plaintiffs delivered the property in question to the witness Thompson, they knew he was engaged in constructing a mill for the defendants under a contract, and was to furnish the engine, boiler, and machinery required in such mill, and the plaintiffs permitted Thompson to take their property described in the declaration, and affix it to the mill so being constructed for the defendants by Thompson, and the plaintiffs neglected to inform the defendants of the manner in which they had placed their property under the control of Thompson, or give notice of their title to such property so furnished by them to Thompson for the purpose of equipping the defendants' mill, until after such property had been affixed in the mill constructed on defendants' land under the contract made by them with Thompson, if the same was done without notice of or knowledge as aforesaid of the defendants, the plaintiffs cannot claim the property and compel the defendants to pay for it.

"Plaintiffs introduced a letter dated Port Huron, December 13, 1882, and which the defendants admit was received by them on the fifteenth of the same month. In this letter plaintiffs ask the defendants the question: 'Has Mr. Thompson informed you that the the machinery shipped to him was ours until paid for?' It further states that plaintiffs have no doubt he (Thompson) has told defendants in respect thereto, and, further, that there was due at the date of shipment $2,683.47, which should have been paid some days ago; and defendants are requested, as they expect to own the machinery, to write how they feel about it, and when they expect to pay for it.

"Now, gentlemen, the terms of this letter are sufficiently explicit to put the defendants on their guard, and if defendants allowed the machinery, or any part of it, to be placed in their mill, and connected with other machinery, or

attached to the mill, after the receipt of such letter, in such a way that it would have become a fixture had the machinery been the property unconditionally of Thompson, the effect of such knowledge would be, as above stated, to put defendants on their guard; and under such circumstances they cannot claim to own the property under their contract with Thompson as a part of their real estate, which was subsequently placed in the mill, and attached to it.

"It is not claimed by the plaintiffs that defendants had any notice of their claim upon the machinery until the receipt, on the fifteenth day of December, of a letter dated the thirteenth of December, and it therefore becomes an important question for you to determine what may have been the stage of completion of the mill upon the fifteenth day of December, 1882.

"If you determine that at that time there was a portion of machinery which had not been placed in position for use in the mill so as to become a fixture, and if you further find the defendants afterwards, and before the commencement of this suit, denied plaintiffs' right to such property, claiming to own it as their own, then the plaintiffs are entitled to recover the value of such machinery as you may find was not placed in position for use, or attached to the mill so as to make it a fixture, not exceeding the amount of $860, which is the amount remaining unpaid under the contract between Thompson and plaintiffs, including the principal and interest.

"If, on the other hand, you conclude that, when defendants received notice of the claim of the plaintiffs to the effect that they owned the machinery until paid for, the machinery had been placed in the mill and attached to it by Thompson, under his contract with the defendants, in the manner that it was intended to be located for use in such mill, in that event the plaintiff cannot recover."

This charge was in the main correct; but it overlooked or ignored the fact that the plaintiffs' own testimony, uncontradicted by any other testimony in the case, shows that the plaintiffs knew that the machinery in controversy was to be taken to the county of Alcona, and there put into a mill, on the land of defendants, by Thompson, at the time they made the conditional sale to him. It was therefor error to submit this fact to the jury as a question in dispute under the testi-

mony, and I think it contains a further error, which I shall point out further on.

The subject of conditional sales of personal property forms an important branch of the law, and those conditions which retain title in the vendor have caused much discussion among jurists, and have been the cause of considerable injustice to purchasers without notice, insomuch that in some states sales of this character have been the subject of legislative action, requiring such contracts to be in writing, and filed like chattel mortgages, in order to give notice to the world of the rights claimed under such contracts. Between the immediate parties to the contract difficulties can seldom or never arise. But third parties, dealing with the vendee without notice, are the persons who suffer by such secret agreements. In this State, where the validity of such sales is recognized, the vendor's right to follow the property into the hands of third parties, or to sue them for its conversion, is made to depend upon the good faith of the transaction; and where the purchase is made from the vendee in good faith, and without notice, under circumstances in which the original vendor must have known or contemplated that the property would be sold by his vendee, and incorporated into or made part of the freehold, his rights have been made subservient to those of the innocent purchaser.

Thus in *Knowlton v. Johnson*, 37 Mich. 47, where the plaintiffs sold water-wheels with the express understanding that they were to be put into a mill, and used there, although it was stipulated that no property in the wheels should vest in the purchasers until payment, yet an innocent purchaser of the mill, who had no notice of any outside interest or claim, was held to have acquired a perfect title to the wheels, and could not be made liable in an action of trover at the suit of the original vendors of the wheels. The Court said:

" When the plaintiffs allowed the wheels to be worked into the mill, they assumed risks, and among them such a result

as has occurred; and it would be contrary to justice to allow them to save themselves by casting the consequences upon the defendant."

The same principle was again recognized in *Ingersoll v. Barnes*, 47 Mich. 104, where *Knowlton v. Johnson* was cited with approval, and distinguished from the one then under consideration in the fact that the purchaser had notice, or at least knowledge of such facts as should have put him upon inquiry.

In this case defendants' contract with Thompson was made before he purchased of plaintiffs. That contract contemplated that the machinery should be wrought into and become part of the freehold of defendants. This fact the plaintiffs knew when they sold the machinery to Thompson, and they must have contemplated this result. Any agreement, therefore, between them and Thompson, by which they were to retain the title to the property after it so became a part of the freehold in the carrying out of his contract with defendants, would operate as a fraud upon the defendants, and make them liable as tort-feasors without any voluntary act on their part. Without giving defendants any notice of their claim that the sale was a conditional one, or a mere lease, and all payments made should be simply for the use of the property, but instead guarantying that the property should be shipped upon defendants' paying $500 on Thompson's order, they induced defendants to act, and part with their money. Under these facts, it would be gross injustice for them now to claim that the title of the property did not pass to defendants under their contract with Thompson. They are estopped from asserting that Thompson had no title to the property, and no right to place it in the mill under his contract with defendants, upon the plainest principles of justice. Nor could they do this after Thompson had placed the property in the mill, although some parts of the machinery had not been securely attached to the realty. The

money was paid on a guaranty of shipment, which they could neither recall nor repudiate. At the time they gave notice to the defendants, the debt owing them by Thompson, and for which they held his note, was past due. They could have secured anything that was then due or to become due from defendants to Thompson by the ordinary process of garnishment, if they were fearful of losing their debt. They do not appear to have had any fears of this money being diverted.

Plaintiffs and Thompson appear to have been acting in harmony. He gave an order on defendants in favor of plaintiffs for the balance due him under the contract, and they promptly paid to plaintiffs the balance they considered his due. They do not appear to have made any effort to collect the balance due them from Thompson from him. The effect of this action of trover is to collect the balance due them from Thompson from the defendants; and from all the facts and circumstances which are stated above I do not think the action of trover will lie.

I think the circuit judge should have taken the case from the jury, and directed a verdict for the defendants, for the reason that plaintiffs understood, when they sold the machinery to Thompson, that he purchased it for the purpose of attaching it to the realty of defendants under a contract with them that bound him to do so, and with that knowledge obtained $500 of the defendants' money, and guaranteed the shipment of the machinery for the purpose above stated, without notice to or knowledge on the part of defendants that plaintiffs still claimed the title to the machinery.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.