BRUSH *v.* GRAND TRUNK RAILWAY CO. OF CANADA.

1. RAILROADS—OBSTRUCTING CROSSING—ANIMALS—EVIDENCE.
   Evidence tending to show that defendant's servants left a freight car standing at and partly over a crossing of the track and a public highway, and that plaintiff's horses took fright at the obstruction and ran away, injuring him, although the evidence as to which side track at such intersection the car was placed upon, was conflicting, *held,* to present a question for the jury; and the trial court properly charged that if the car was on either side track at the crossing, plaintiff could recover.

2. SAME—NEW TRIAL—EVIDENCE.
   *Held,* also, on review of the evidence, that the verdict was not contrary to the weight thereof.

Error to Macomb; Law, J., presiding. Submitted November 19, 1913. (Docket No. 152.) Decided March 27, 1914.

Case by Henry Brush against the Grand Trunk Railway Company of Canada for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

*Harrison Geer,* for appellant.

*W. T. Hosner (Erskine & Lungerhausen,* of counsel), for appellee.

MOORE, J. The plaintiff sued the defendant, seeking to recover damages for personal injuries he claims to have sustained in May, A. D. 1909, in the village of Armada, at the intersection of Fulton street and defendant railroad, through his team becoming frightened and running away because of a freight box car which he claims stood foul of the west end of the

crossing plank on the siding, which car obstructed the crossing for more than five minutes. From a verdict and judgment in favor of the plaintiff, the case is brought here by writ of error.

We quote from the brief of appellant:

"We rely upon the following errors in this brief:

"(1) Error on the part of the trial judge in refusing our requests to charge numbered 1 and 2, to the effect that the position of the car on the northerly siding west of the planking was immaterial, for the reason that the undisputed evidence showed this car did not frighten plaintiff's team, and did not obstruct his passage over said track. Further, the jury were permitted to find defendant guilty of negligence if they found by a preponderance of the evidence that a car stood either on the north or south siding for a period longer than five minutes in such a position as to appreciably obstruct the traveled portion of the highway.

"(2) Error upon the part of the trial judge in refusing our motion for new trial, for the reason that the verdict was clearly against the great weight of the evidence introduced on the trial of said cause."

It becomes necessary to quote from the testimony of the plaintiff:

"I am 46 years of age now. I was driving my team on the day of the accident. One was 10 and the other 7 years of age. I had owned them since they were born. I used them on the farm. They were quite gentle, and had no bad habits, and had never run away. They had never shied at anything ordinary. The children drove them back and forth, and like that, on the farm. My boy was about 6 years old at the time, and the girl was about 12 years old. The girl dragged with them, and like that. There were planks on the wagon that I was driving, with side pieces to it. It is in the shape of a wagon box. I was sitting in the center of the seat. I had some bags which were filled with other bags for a seat. I had my feet braced against the bolster stakes. * * * After I left there I turned around to go to Stump's elevator for

some seed oats. Fulton street was the road that led to the elevator. There was no other crossing to the elevator. I was driving along, and of course I didn't pay any attention to anything, only my team; and the nearer I got up to the crossing I noticed the car was there, and when I was right up onto it I didn't have the chance to go back, as I had to go right ahead. No chance to back in around between them tracks. It was a box car, and stood on the west side of the road. I had driven over the crossing a good many times. It was a plank crossing, and there was plank in between the tracks. In my judgment it was all planked over the crossing; but I couldn't say. I should judge the planks were 15 or 16 feet wide. I never measured them.

"Q. This box car that you say you saw, where was that in reference to the planking?

"A. It was standing over the plank.

"Q. About how far, would you say?

"A. I should say about 2 feet; somewheres along there. When I observed the box car I firmly braced myself, so that my horses would not run away. They shied and got scared, and I braced myself with all my might. They were just opposite the car, going up to the car when they shied. They stuck their heads out and took the lines away from me and jumped, and that threw me back on the wagon. I tried to pick myself up as soon as I could to hold them, and they made the second jump and a swift turn, and the wagon went so fast around the corner that the two wheels was off the ground, and that left one side lower, and with that force it knocked me off the wagon. I struck my forehead on the front wheel. I struck the ground, and the wheel ran over me, and then I don't remember anything. * * * I came to Armada a day or two afterward. I believe I drove the same team. I can't remember; it has been quite a while, and my memory isn't as good as it was before I was hurt."

He gave a detailed statement of the result on his wagon and upon himself.

He was cross-examined at great length, and in the cross-examination appeared the following:

" *  *  *  Q. I am asking you whether you saw

that car when you stopped back there 300 or 400 feet from the track?

"*A.* I couldn't see the whole car because there was another one on the north crossing that kind of prevented me from seeing the whole car on the south side.

"*Q.* The car on the north crossing is the one that your team took fright at?

"*A.* No, the one at the south; the one on the north wasn't out as far as the other one.

"*Q.* The car on the north switch wasn't at the planking?

"*A.* I couldn't say for a fact which one, which was the closest.

"*Q.* It wasn't the car on the north planking that your team got frightened of, was it?

"*A.* I guess it was, come to think; my memory isn't as good as it used to be since I have been hurt.

"*Q.* Where was this car on the north siding?

"*A.* On the west side.

"*Q.* How far was it west of the planking, that is, the car that wasn't so close to the planking as you say; how far west of that planking was that car—as much as 8 or 10 feet?

"*A.* No, I don't think it was.

"*Q.* Was it as much as 6 feet west of the planking; that would be your best estimate?

"*A.* This car that my horses got scared of?

"*Q.* I am not talking about that; I want to know this car that you say obstructed your view from the car that your horses did get scared of. You say that car was on the north siding; how far west of the planking?

"*Mr. Erskine:* I don't think that is his testimony.

"*Mr. Williams:* He knows I haven't misstated it, and I take exception to the interruption at this time.

"*The Court:* Go ahead with your questions. (Question repeated.)

"*A.* The one on the north was about 6 feet, I should think.

"*Q.* That would be the east end of the car you think was about 6 feet west of the west end of the planking?

"*A.* Six to 8 feet. The car that my horses got frightened at was on the south siding, and on the west side of the road. That car came up onto the plank-

ing. The other one didn't. My horses didn't shy at this car on the north siding. They passed that all right, and took no fright at it. I am positive of that, and am not mistaken. There was a car on that south switch, a box car. I didn't have time to look to see what color it was. As I drove along I was watching out to see what was ahead of me, and I didn't see that the car was up so close. My horses began to get frightened when they approached this south siding. They hadn't been frightened up to that time, and had walked over the tracks. I am not mistaken about that.

"*Q.* They walked over the first siding, and didn't even prick up their ears?

"*A.* No, sir.

"*Q.* And continued to walk over the main line?

"*A.* Yes, sir.

"*Q.* When they came to this south siding they got scared?

"*A.* Yes, sir; I was coming from the north going south. The car that my team got scared at stood on the south track. I had a tight rein on them. They got frightened at the car as it stood so close, and they were getting the start of me, or going to start with me. I always kept a tight rein with them when I drove over a railroad. I was pulling right on them this day, and had a good stiff hold. They started to pull when I wanted to make them go across the track where the car stood. That was the southerly track of the three that I was passing over. I took the tight hold of them when I saw they were going to start with me. I didn't want them to run away.

"*Q.* They never had run away?

"*A.* No, sir."

It was doubtless because of the result of the cross-examination that the first and second requests to charge were offered. They read:

"(1) I charge you that there is no evidence in this case which would warrant you in finding that plaintiff's team took fright as it was passing over defendant's tracks at Fulton street other than the testimony of plaintiff himself to such effect, and you will remember that plaintiff repeatedly, upon cross-examination,

stated and reiterated that his team did not take fright
at a box car which stood on the northerly siding to
the west of the driving portion of Fulton street, but
that it took fright at a box car standing on the south-
erly siding, and foul of the west end of the planking
at Fulton street.

"I charge you, therefore, that you cannot in this
case give a verdict for plaintiff should you find by
preponderance of the evidence that the box car stand-
ing on the northerly siding, and upon the westerly
portion of Fulton street, was so situated or placed
that it might obstruct the passage of vehicles over
said crossing, because, under the admissions of plain-
tiff, that box car, regardless of where it may have
stood on the day in question, did not obstruct his pas-
sage over said crossing, and there is in this case no
testimony to show, or tend to show, that his team took
fright at the car on the northerly siding.

"(2) I charge you that you cannot give plaintiff
a verdict against his own testimony and against his
own case as he makes it out; there being no evidence
to show that his team took fright at a box car stand-
ing upon the northerly siding, and at the westerly por-
tion of Fulton street. You cannot give him a verdict
in this case regardless of the preponderance of evi-
dence as to where said car stood."

The judge declined to give these requests, but in-
structed the jury:

"(4) The court will now state to you the questions
of fact you are to decide and determine. You have
the right to consider these issues in any order you
please; but the court recommends that you take them
up in the following order: *First.* You should first
determine whether, on the 3d day of May, 1909, there
was a box freight car standing on either defendant's
north side track or on defendant's south side track,
and westerly from the center of the highway, and in
the highway, and in such a position as to obstruct the
traveled part of the highway, and in this position for
more than five minutes. If there was no such car in
such a position for more than five minutes on either
of these side tracks as to obstruct the traveled por-
tion of the highway, which at this particular place you

should consider as the width of the planked crossing, your verdict must be for the defendant, and it will not then be necessary for you to consider any other questions. Before you are justified in finding that any car obstructed the traveled part of the highway on this crossing, you must find that some part of the easterly end of the car extended over some part of the westerly end of the crossing so as to obstruct the planked crossing for travel to an appreciable extent.

"I charge you that, if you find the easterly end or portion of the box car which stood on the northerly or southerly siding, and at the westerly side of Fulton street, did not extend to and upon the crossing planks which had been laid for teams to pass over defendant's right of way at that point, then the defendant is guilty of no negligence in the premises, and your verdict will be for defendant. If you do find by a preponderance of the evidence that a car on either side track obstructed the westerly end of the planked crossing as I have described, and for a longer time than five minutes, you will then take up the next question, which is: *    *    * "

Counsel say in the brief:

"There is no testimony in this record warranting the submission to the jury of whether plaintiff's team took fright at a car which stood on the northerly siding foul of the planking. The record is absolutely barren of testimony to show such fact. Plaintiff's admission that the car on the northerly siding did not cause his injury is uncontradicted. It is not proper to permit a jury to give a plaintiff a verdict against his own admissions and his own case, as he makes it out, with no other evidences. *Karrer* v. *Railway Co.*, 76 Mich. 400 [43 N. W. 370]; *Jenks* v. *Colwell*, 66 Mich. 420 [33 N. W. 528, 11 Am. St. Rep. 502]."

We have examined both of these cases, and do not think them controlling here. The declaration stated the negligent act to be:

"And at said time and place said defendant placed a box or freight car on its said right of way, and extending into said Fulton street in such a careless and negligent manner as to seriously incumber the said

highway, and to so encroach upon the track which horses, wagons, and other vehicles had been accustomed to take as to leave insufficient room for teams to pass and repass on such traveled track, and left said car in said highway as aforesaid for a great and unreasonable length of time, to wit:    *    *    *"

This is stated in various forms, and does not undertake to say whether the car was on the north or south railway track.

The doctor who was called to attend the plaintiff testified:

"Some one telephoned to my office that there was a man hurt at the depot. I went there with Mr. Powell, who drove up to my office with his pair of mules. I found Mr. Brush on the south side of the railroad track. He was bleeding from his ears, nose, and mouth, and in a nearly unconscious condition. He was muttering, but not intelligently. With the assistance of two or three men that happened to be there, I put him in my buggy, took him to my office, and put him on the couch.

"Q. Did you notice in crossing the crossing in question a box car standing there?

"A. I did.

"Q. Where was that standing?

"A. It was standing over the edge of the plank of the driveway.

"Q. About how far would it extend over the plank, in your judgment?

"A. Well, I don't know about how far. It would be far enough so as the team, the whiffletree of the off mule got on the drawbar of the car. We drove by, and it slipped up over, and we went on, and so that much of it was in over the planks of the drive.

"Q. Would you say it was as much as 2 feet?

"A. I should say so. I took Mr. Brush up to the office, put him on the couch, and administered to him about four hours before he regained consciousness."

The witnesses were not agreed as to where the car was that obstructed the highway, nor were they agreed as to whether there was a car on only one siding. It may or may not be significant that the employee or

employees of the defendant company who knew were not called.

The record shows plaintiff was badly hurt, and at once became unconscious. The cross-examination shows that he was confused, and that his memory was not good. If defendant negligently placed a car so as to give a cause of action, it does not matter very much whether it was on the north siding or the south siding.

2. Did the trial judge err in refusing a new trial? It is the contention of counsel that plaintiff testified that the car at which his team took fright stood foul of the southerly siding; while the testimony that there was a car foul of the planking at the southerly siding is contrary to the great weight of the evidence. They also claim that, while—

"There is some testimony that a car on the day in question stood foul of the westerly end of the planking on the northerly siding. This, however, would not warrant a jury in finding a verdict for the plaintiff, since it is not enough that they might find a car stood on the northerly siding foul of the planking, but they must find from the evidence that it was the cause of the injury. The testimony of the plaintiff is undisputed that the car on the northerly siding did not cause the injury. There is no testimony which would warrant the jury in finding otherwise. They could do no more if they found the car on the northerly siding was foul of the planking than to guess, having determined the location of the car, that it was the cause of the injury to plaintiff. There is no testimony to support any finding that the car on the northerly siding caused any injury to plaintiff, regardless of where it may have stood on the day in question."

In disposing of the motion for a new trial, the judge said in part:

"The theory on which plaintiff recovered a verdict is that the team of horses which he was driving through the village of Armada became frightened at

a box freight car which defendant had negligently left on the highway at a place where defendant's right of way crosses such highway, and in such a position that a portion of the car extended into and over a part of the traveled portion of the highway, to wit:  Over a portion of the plank crossing construction for the passage of teams and vehicles over the defendant's railway tracks.  Plaintiff also claims that when his horses became frightened at this car they became uncontrollable and ran away, injuring him.

"A considerable number of witnesses were sworn on the trial, and there was much conflict in the testimony as to the car and its position; some of the witnesses even testifying that they saw no car at all in the highway at the time plaintiff claims he was injured.  However, there is substantial testimony in the record tending to prove that defendant had left the car in the position as claimed by plaintiff, and that this car frightened his horses, causing them to run away, and thereby injuring him.  All this conflicting testimony was submitted to the jury, and the jury found that there was a car in the highway extending into the traveled portion, and that this car frightened plaintiff's horses, and produced an injury.

"I do not think the verdict rendered by said jury was contrary to the weight of evidence.  At least, not sufficiently so as to justify the trial court in setting aside the verdict.  This disposes of the first two reasons assigned by the defendant in its motion."

The court, in his charge to the jury, explained, in a manner that does not receive criticism from counsel, what constitutes negligence.  He also told the jury that, in order to find defendant liable, they must find that the team took fright from a car negligently placed in the highway, and that plaintiff was free from contributory negligence.  The testimony is clear that the team was frightened because of a car which was in the highway.  It is not so clear as to which siding the car was on.

Some portions of what we said in relation to the first assignment of error applies to this one.  If the

negligent act of defendant caused the injury, and plaintiff was free from contributory negligence, then there was liability. We find no reversible error.

Judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.