White Way Electric Sign and Maintenance Company,
Appellee, v. Chicago Title and Trust Company,
et al., Appellants.

Gen. No. 38,887.

Opinion filed February 9, 1937.   Rehearing
denied February 23, 1937.

KRINSKY, LEVITAN & GLASSNER, of Chicago, for appellants; MOSES LEVITAN, of counsel.

PAYTON J. TUOHY, of Chicago, for appellee.

1

MR. JUSTICE FRIEND delivered the opinion of the court.

White Way Electric Sign and Maintenance Company, as plaintiff, sued out of the municipal court a writ of replevin against the Princess-Clark Theatre Corporation, Chicago Title & Trust Company and Jack M. Franks, to recover possession of certain equipment and appliances constituting part of a canopy and sign built and installed by plaintiff in the Princess Theatre Building, Chicago. After the bailiff had taken possession of the replevied property under the writ, the trustees of the estate of Jacob Franks, deceased, owners of the Princess Theatre Building, intervened and filed an answer averring that plaintiff was not the owner of the property seized under the writ, that the property constituted part of the real estate known as the Princess Theatre Building and was an essential part of, and necessary for, the operation of the building. Upon trial the court found the right to possession of all property described in the replevin writ in plaintiff, and owners of the real estate and lessors under the lease to the Princess-Clark Theatre Corporation, have prosecuted this appeal.

The essential facts disclose that May 11, 1934, Princess-Clark Theatre Corporation was in possession of the building known as the Princess theatre, 317–319 South Clark street, Chicago, as lessee, under a lease with Chicago Title & Trust Company and the trustees under the last will and testament of Jacob Franks, deceased, owners of the freehold. The lease provided that the lessee should at its own expense erect ''a steel canopy from the front of the demised premises to the street,'' and install all necessary sound equipment, projection booth, attraction board, and any and all other equipment necessary for the operation of a motion picture theatre; that as soon after the commencement of the lessee's occupancy as possible, a list of all

necessary equipment should be submitted to the lessors, together with plans and specifications for the specific work contemplated, and that the lessors' written approval thereto should be procured before commencement of any work; that the lessee should, after accepting contracts for installation of equipment as provided in the lease, deposit with the lessors ''a sum of money equal to the total amounts to be paid to all of the contractors in the said contracts. The lessor shall then, only upon completion of the contractors' obligations, including the satisfactory installation of said equipment necessary for said operation, pay to each of such contractors out of said amount so deposited with the lessor only the amount due each of said contractors under each of the said contracts.''

It was further provided that all additions and installations made in the demised premises in connection with any work specified in the lease, and especially including any and all trade fixtures and equipment to be attached to the demised premises in any manner whatsoever ''or that shall be of any nature other than a clearly portable nature, and further including any and all chattels as listed on the list to be submitted to the lessor, . . . shall as of the date of such installation become a part of the real estate and/or the property of the lessor and shall remain in the demised premises at the expiration of this lease by lapse of time or otherwise.''

The theatre corporation evidently lacked funds to comply with that provision of the lease which required it to deposit with the lessors a sufficient sum to pay all the contractors employed to make the improvements and installations contemplated by the lease, and therefore in order to satisfy and protect the lessors against any claims that might subsequently be asserted against the property, it procured waivers of lien from the various contractors, including plaintiff, whose waiver of

lien, dated May 11, 1930, was forthwith delivered to Jack M. Franks, lessors' agent.

In November, 1934, the theatre corporation defaulted in the payment of its rent and other obligations under the lease and lessors recovered possession of the demised premises. Thereafter, in May, 1935, the bailiff took possession of the equipment in question under the replevin writ, and it was not until the property was seized by the bailiff that lessors were apprised of the existence of a conditional sales agreement between plaintiff and the theatre corporation, dated May 11, 1934. Plaintiff claims that there is unpaid and due from the theatre corporation some $4,500 for material and labor under its conditional sales contract, and that it is entitled to the possession of the property under the provisions of its sales agreement with lessee. The building in which the sign and equipment were installed by plaintiff was built for and since its erection has continuously been used as a theatre building, and at the time the equipment was installed it was used primarily as a motion picture theatre.

As ground for reversal it is urged that:

"(1) When a building is erected for and permanently devoted to a particular purpose, as in the case at bar for a theater, anything connected to the building for the carrying out of that purpose, as the electric sign system and its equipment in the case at bar is an integral part of the building and is to be considered as part of the realty," and

"(2) The issuance by plaintiff to the owner of the building of a waiver of mechanic's lien, accompanied by its complete silence on the existence of the secret conditional sales agreement with the lessee, amounted to an affirmative representation by plaintiff that the sign and equipment were part of the realty, that same was paid for, that title thereto was in the tenant, and that plaintiff claimed no right or lien thereto. Plain-

tiff is therefore estopped from claiming that it is not part of the realty and is removable therefrom. To permit plaintiff to enforce a secret lien would amount to a fraud on the owner of the building.''

Although the first proposition is fully and earnestly argued by counsel on both sides, and cases are cited showing the modern trend toward adjudicating fixtures as personalty where that intent can be gathered from the conduct or actions of the parties, we regard it unnecessary to enter into an extended discussion of the question, because in the view we take the case at bar presents a state of facts clearly involving the doctrine of estoppel, as urged under lessors' second point. The theatre corporation had, under the terms of the lease, agreed to deposit a sufficient sum to pay all contractors, including plaintiff. This requirement was clearly intended to afford the lessors security against any possible lien claims that might subsequently arise. By issuing the waiver of mechanic's lien and at the same time remaining silent as to its conditional sales contract with the theatre corporation, under which it claimed title to the equipment, plaintiff induced the lessors to waive their security under the lease and to believe that the property was paid for, that title thereto was in the lessee, and that plaintiff had no further interest therein. Obviously, if the lessors had known of the conditional sales agreement and that plaintiff had claimed a considerable balance due from the tenant, it would not have waived the provisions of the lease requiring the theatre corporation to deposit with the owners sufficient money with which to pay plaintiff. Plaintiff's conduct in withholding these facts and in helping the tenant to mislead the owners into believing that the equipment was fully paid for, constituted fraud, and estopped plaintiff from later asserting any rights to the sign and equipment, either

under the conditional sales contract or otherwise. There is abundant authority to sustain this conclusion.

Lessors cite *Jenks v. Colwell,* 66 Mich. 420, as being a case in point and similar to the facts here presented. There plaintiff was the vendor, under a conditional sales contract, of machinery sold to one Thompson, a contractor, to be installed in a mill owned by defendants. Plaintiff sued in trover, and in discussing the question here involved the court said (p. 429):

"In this case defendants' contract with Thompson was made before he purchased of plaintiffs. That contract contemplated that the machinery should be wrought into and become part of the freehold of defendants. This fact the plaintiffs knew when they sold the machinery to Thompson, and they must have contemplated this result. Any agreement, therefore, between them and Thompson, by which they were to retain the title to the property after it so became a part of the freehold in the carrying out of his contract with defendants, would operate as a fraud upon the defendants, and make them liable as tort-feasors without any voluntary act on their part. Without giving defendants any notice of their claim that the sale was a conditional one, or a mere lease, and all payments made should be simply for the use of the property, but, instead, guaranteeing that the property should be shipped upon defendants' paying $500 on Thompson's order, they induced defendants to act, and part with their money. Under these facts, it would be gross injustice for them now to claim that the title of the property did not pass to defendants under their contract with Thompson. They are estopped from asserting that Thompson had no title to the property, and no right to place it in the mill under his contract with defendants, upon the plainest principles of justice. Nor could they do this after Thompson had placed the property in the mill, although some parts of the ma-

chinery had not been securely attached to the realty.''
Similarly, in the case at bar, by not giving the owners
of the property any notice of its claim that the sale to
the lessee was a conditional one, plaintiff induced the
owners to permit the installation of the sign system in
the building, the cutting off and making changes in the
old canopy, allowed the lessee to go into possession,
and to waive the provisions of the lease which were in-
tended for their security and protection.

The doctrine of estoppel has under similar circum-
stances been recognized and followed in Illinois. In
*Brittingham & Hixon Lumber Co. v. Board of Edu-
cation,* 284 Ill. App. 429, the court, quoting from *Heid-
enbluth v. Rudolph,* 152 Ill. 316, said:

''A contractor in order to maintain his mechanic's
lien for work done and material furnished, must act in
good faith towards all other persons interested in the
property involved, and an act on his part which would
make it unjust and inequitable to enforce his lien may
operate as an estoppel to its enforcement in a court of
equity.''

In *Springfield Marine Bank v. Marbold,* 264 Ill. App.
446, in discussing the question of estoppel, the court
said (p. 463) that ''estoppel may arise from silence as
well as from words,'' citing *Oliver v. Ross,* 289 Ill. 624;
*Lloyd v. Lee,* 45 Ill. 277; *Vail v. Northwestern Mut.
Life Ins. Co.,* 192 Ill. 567.

In *Robbins v. Moore,* 129 Ill. 30, it was said (p. 54):

''Where the foundation of the estoppel is in silence,
and omission to give notice of existing rights, the party
relying on the same must not have had the means of
ascertaining the true state of the title by reference to
the public record, but such rule does not apply to a
case where the land owner has actively encouraged and
induced the injured party to act. In the latter case,
the party making the declaration acted on will be es-
topped, although he may have been ignorant of his

true rights. The other party may rely on his representations without further inquiry, and act upon the assumption that he is cognizant of his rights, and knows the condition of his own title.''

In 26 Corpus Juris 733, sec. 16, par. 125, the author says:

''One may be estopped to claim an annexed article as part of realty belonging to him by reason of his misleading conduct or declarations in regard thereto. Conversely, one may, by force of the doctrine of estoppel, be precluded from claiming that an article is not part of the realty or is removable therefrom.''

In Bigelow on Estoppel, 6th ed., p. 648, the author discusses the doctrine of estoppel by silence as follows:

''As we have seen, from total but misleading silence with knowledge, or passive conduct joined with a duty to speak, an estoppel will arise. The case must be such that it would be fair to equate the silence with a declaration of the party that he has, e. g., no interest in the subject of the transaction. Indeed, silence, when resulting in an estoppel, may not improperly be said to have left something like a representation upon the mind; for the case is this: A negotiation is going on, and the mind receives the facts brought out, and receives those facts only. Hence, everything inconsistent with them, relating to the rights of others present as well as to those of the party with whom the negotiation is going on, is excluded. The effect no doubt is negative, but the mind goes wrong because of that negative; and the silence certainly affects the matter of calculating the advantages of the proposal.'' Similar enunciations on the doctrine of estoppel may be found in *Brown v. Burke,* 155 Ill. App. 249; *Haskins v. Hesley,* 152 Ill. App. 141.

Plaintiff relies principally on the recent case of *National Bank of Republic v. Wells-Jackson Corp.,* 358

Ill. 356, where it was held by a divided court that a sprinkler system installed in a building used as a garage, sold under a conditional sales contract, was removable and did not become part of the realty by annexation or lose its character as personal property, as against the claim of the owner of the real estate, who upon forfeiture of the lease had taken possession of the building in which the sprinkler system was installed. The owner in that case also claimed that plaintiff was estopped from asserting title to the sprinkler installation, but the court held that the doctrine can only be invoked to prevent injustice or fraud, and said that "the Phillips Company did nothing to lead McKinlock to believe that the property was paid for and that the title was in his tenant."

Inferentially it may be said that under a state of facts similar to those involved here the Supreme Court would have applied the doctrine of estoppel. All the elements defined by the authorities hereinbefore cited are present in this proceeding to justify the application of the doctrine.

We are of the opinion that the judgment entered by the trial court was erroneous, and that the right to possession of the property in question is in defendant. The judgment will therefore be reversed and the cause is remanded to the municipal court with directions to enter an order returning the property in question to defendant.

*Reversed and remanded with directions.*

JOHN J. SULLIVAN, P. J., and SCANLAN, J., concur.