TOWN & COUNTRY BANK OF SPRINGFIELD, Plaintiff-Appellee, v. JAMES M. CANFIELD CONTRACTING CO., INC., et al., Defendants.—(GENERAL PAVING COMPANY, INC., et al., Defendants-Appellants.)

Fourth District   No. 14516

Opinion filed December 12, 1977.—Rehearing denied January 5, 1978.

Robert J. Waaler, of Champaign, for appellant General Paving Company, Inc.

Craig A. Randle and James R. Potter, both of Londrigan & Potter, P.C., of Springfield, for appellant Marle, Inc.

Donald J. Casper, of Springfield, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal comes to us in a plain brown wrapper labeled garnishment when in fact it involves several intricate questions of law which do not lend themselves readily to such a simplistic solution.

In 1975 the State of Illinois was engaged in constructing Interstate Highway 72 between Monticello and Springfield. As a part of that project it entered into a contract with General Paving, Inc., defendant-appellant,

herein referred to as "General Paving." General Paving, in turn, entered into a number of subcontracts, one of which was with James M. Canfield Contracting Company, Inc., whose principal officer was James M. Canfield. For convenience both of the latter will be referred to collectively as "Canfield." Canfield likewise entered into a number of subcontracts, one of which was with Marle, Inc., defendant-appellant, herein referred to as "Marle." Other subcontractors of Canfield are not involved in this appeal.

In order to finance his work Canfield consulted with Town & Country Bank of Springfield, plaintiff-appellee, herein referred to as "Bank." The upshot was that Bank agreed to advance funds to Canfield and Canfield made an assignment to Bank of the contract with General Paving, which acknowledged the assignment. The entire contract is not material here except for two provisions which are in hot dispute: (1) That Canfield present at the time of payments by General Paving either affidavits of payment or non-payment or lien waivers from his subcontractors; and (2) that Canfield post a performance bond with General Paving in the amount of 100% of the value of the subcontract.

From the time of the assignment on May 28, 1975, until December 1, 1975, General Paving paid over $46,370.30 under the assignment. On December 1, 1975, Bank, apparently feeling itself insecure as a result of some conversation with an officer of General Paving, took judgment by confession against Canfield in the circuit court of Sangamon County in the sum of $165,410.31 and costs. Thereafter, it served a garnishment summons on General Paving.

General Paving answered the garnishment interrogatories indicating that it held $104,000 to the account of Canfield, less any amount due to Canfield's subcontractors. The answers were subsequently amended on motion until the final amount due became $66,633.01. Shortly after the first answer was filed, General Paving filed a motion to set aside the order which the trial court had entered requiring General Paving to pay Bank $104,000. The basis for the motion was to require Canfield to supply either the affidavits or lien waivers from his subcontractors as required by the contract.

The trial court ordered General Paving to give notice to all parties who, to its knowledge, had a claim on the Canfield funds. A number of subcontractors, including Marle, did file such claims. Bank filed a motion to dismiss such claims.

Thereafter, the trial court entered an order vacating its prior garnishment order, allowing General Paving to file an amended answer and directing the Canfield subcontractor-claimants to file answers as to why their claims should not be stricken. The latter part of the order apparently grew out of Bank's motion to dismiss which was supported by

an affidavit made by an official of the Department of Transportation of the State of Illinois, stating that none of the subcontractors involved had served a lien notice upon the department.

Finally, on January 19, 1977, the trial court entered an order based on the pleadings in favor of Bank and against General Paving in the amount of $66,633.01; the same order dismissed the claims of the subcontractors as prayed in Bank's motion. Motions to reconsider were denied and this appeal followed.

Meanwhile, prior to the order directing notice to the subcontractors-claimants, Marle had filed a separate proceeding in the circuit court of Sangamon County for an accounting, naming as defendants General Paving, Canfield, and the Department of Transportation of the State of Illinois. This was brought to the attention of the trial court in Marle's pleading filed in the garnishment action. So far as the record in the case at bar is concerned, the accounting suit has not been disposed of.

The parties raise a number of issues; some of them are common to all parties, others to certain ones only. We shall discuss such issues irrespective of how they are raised.

General Paving's primary argument is that nothing was due to Canfield because he had not provided the affidavits or lien waivers called for by the contract; that Bank, as assignee of Canfield, can have no greater rights than Canfield himself. Bank answers the argument by saying that General Paving is estopped to raise such a defense because all prior payments made during 1975 (apparently four in number) were made without requiring such documents and without knowledge by Bank that such was the case. Bank further argues estoppel as to General Paving because General Paving waived the requirement of a performance bond by Canfield, again without Bank's knowledge.

In recent times, "estoppel" has become a sort of a legal catch-all, rivaling "res gestae" as one of the least-understood but most often used refuges when all else fails. Notwithstanding its frequent allegation, it is a highly technical and restrictive principle of law.

■■ At least three types of estoppel are recognized: (1) By matter of record; (2) by matter of writing; and (3) by matter *in pais*. The first two are less often encountered, but the third, sometimes designated as "equitable estoppel," is more commonplace and is the one involved in the case at bar. The requirements of raising an estoppel *in pais* are fully set forth in the recent opinion of this court in *Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 365 N.E.2d 1019, and in *National Tea Co. v. 4600 Club, Inc.* (1975), 33 Ill. App. 3d 1000, 339 N.E.2d 515, and hence need no reiteration here. We are concerned with the first requirement as set forth in *Stewart, viz.,* words or conduct by the party against whom the estoppel

is alleged constituting either a misrepresentation or concealment of material facts.

In the case at bar there is no allegation that General Paving made any positive statement to Bank regarding the affidavits or the bond, nor is there any allegation that the matters were concealed. Therefore, any estoppel *in pais* must arise from silence. In his classic work, Chancery Pleading and Practice §675, at 1372 (7th ed. 1930), Puterbaugh has this to say:

> "Estoppel may arise from silence as well as words, and it may arise where there is a duty to speak and the party on whom the duty rests has an opportunity to speak and, knowing the circumstances, keeps silent; but it can arise by silence only where there is knowledge of the facts on one side and ignorance on the other; if the means of knowledge are equally open to both parties, there can be no estoppel. If the silence, however, is not the result of fraud, or of gross negligence, his conduct will not raise an estoppel.
>
> A person is not estopped by his silence where there is no positive duty and opportunity to speak, or the party is in ignorance of his rights."

In *Lowenberg v. Booth* (1928), 330 Ill. 548, 556, 162 N.E. 191, the supreme court said, "Silence does not create an estoppel unless there is a duty to speak."

■■ Also, in *Vail v. Northwestern Mutual Life Insurance Co.* (1901), 192 Ill. 567, 570, 61 N.E. 651, the court said: "A party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others."

■■ Tested by these principles, the conduct of Bank falls far short. It had the contract in hand at all times. If the matters of the affidavits and the bond were of such overriding concern to it, a simple telephone call would have made the information "easily accessible" in the words of the *Vail* court. General Paving had "no positive duty and opportunity to speak," and with the contract in its possession Bank cannot be said to be "in ignorance of [its] rights."

Bank cites four cases in support of its estoppel position. However, each of them is inapposite in that on the facts the party estopped was seeking some personal advantage or preference to himself.

In *Springfield Marine Bank v. Marbold* (1931), 264 Ill. App. 446, the bank was estopped because it had actively participated in attempting a composition of creditors of the defendant while secretly obtaining a mortgage on certain assets through a strawman in order to obtain a secured position. In *White Way Electric Sign & Maintenance Co. v.*

*Chicago Title & Trust Co.* (1937), 289 Ill. App. 1, 6 N.E.2d 510, the contractor had given a lien waiver and then produced a secret conditional sales contract with a retention-of-title provision in order to avoid, he hoped, the effect of a lease provision making the subject matter part of the real estate and hence the property of the lessor. It was an effort again to obtain a preferred position by means of chicanery.

In *Commerce Union Bank v. Blalock* (Tenn. App. 1954), 273 S.W.2d 487, the debtor was attempting to set off against payments to the bank-assignee certain debts owed by the assignor to the debtor on account of materials furnished for the job. The debtor had never advised the bank that it was furnishing such materials. Again, an aborted attempt at preference. *Monroe Banking & Trust Co. v. Allen* (N.D. Miss. 1968), 286 F.Supp. 201, was likewise an attempt by a prime contractor to set off debts owed by the subcontractor to him.

In the case at bar, General Paving is seeking no set-off nor advantage to itself, but rather for the subcontractors, and this is the critical difference. In oral argument General Paving's counsel characterized his client as a "stakeholder," an identity with which we agree.

All of the foregoing discourse on estoppel comes about as a result of Bank's contention that in some manner it stands in a different position from Canfield. It is almost elementary that an assignee stands in no better position than his assignor. (*Allis-Chalmers Credit Corp. v. McCormick* (1975), 30 Ill. App. 3d 423, 331 N.E.2d 832.) The Bank has not addressed itself to the question as to whether Canfield could successfully raise an estoppel against General Paving. In oral argument counsel for General Paving informed us that, given the opportunity to present evidence, it would be shown that there exists a custom in the trade not to require affidavits or lien waivers from subcontractors until the near completion of the work. Assuming *arguendo* that such be the fact, Canfield would be in no position to assert estoppel, or even waiver, estoppel's distant relative.

We find that there was no estoppel against General Paving.

Turning next to the contentions regarding Marle, one of Canfield's subcontractors, we find that the trial court held specifically that since Marle had not perfected its lien, it stood in a subordinate position to Bank. Marle's position is that it is a third-party beneficiary of the contract between Bank and Canfield. Bank holds to a lien theory, *viz.*, that since Marle did not serve any notice on the Department of Transportation as required by statute, it cannot convert what might have been a legal lien into an equitable lien, citing *Board of Education v. Collom* (1966), 77 Ill. App. 2d 479, 222 N.E.2d 804.

Two separate lines of authority exist as to the nature and function of lien provisions in construction contracts and/or performance bonds. One

holds that they are for the protection of the owner to insure that he not be required to pay twice for the same work; the other holds that they are for the protection of the subcontractors to insure that they are properly paid for work done and materials furnished and that they are third-party beneficiaries of the contract.

As to contracts, the first line of authority is fairly represented by *Corpus Christi Bank & Trust Co. v. Smith* (Tex. 1975), 525 S.W.2d 501. The opposite position is taken by *Avco Delta Corporation Canada Ltd. v. United States* (7th Cir. 1973), 484 F.2d 692. There are no recent Illinois cases on the subject, but an earlier case, *Kilburg v. Petrolagar Laboratories, Inc.* (1935), 280 Ill. App. 527, rejected the third-party beneficiary theory.

However, Illinois has held performance bonds to be predicated on the third-party beneficiary theory. *Neenah Foundry Co. v. National Surety Corp.* (1964), 47 Ill. App. 2d 427, 197 N.E.2d 744.

We fail to perceive any difference in function between contract provisions for subcontractors and performance bonds and hold that *Avco* represents the modern view in Illinois.

In *Avco* there was a construction contract containing the common provision for retainage by the owner. The United States made claim against the retainage by virtue of a tax lien; claims were also made by subcontractors who had not perfected liens. The court held that the subcontractors were third-party beneficiaries and that their claims took precedence over the Federal tax lien, saying:

> "The rule in Illinois presently appears to be 'that, if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon.' *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E. 498, 501 (1931). To the same effect, *Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill. App. 2d 362, 369, 219 N.E.2d 726 (1st Dist. 1966).
>
> With these Illinois cases in mind, we turn to the present case in which the construction contract specifically withholds final payments until the general contractor provides an affidavit that all his bills have been paid. Initially, we should note that there is no problem with the fact that at the time of the signing of the construction contract the specific creditors of Parkhill, Inc., were not known. As Corbin stated: 'Of course the beneficiary must be identified before he has an enforceable right; but it is not necessary

that he should be identified or identifiable at the time the contract is made. It is enough that he be identified at the time performance is due.' 4 Corbin on Contracts §781, at 70 (1951).

A materialman may be a third party beneficiary of a promise by a general contractor to obtain a surety bond for the prompt payment of all laborers and materialmen, and, in the context of a government contract, an unpaid materialman of a subcontractor was allowed to sue the general contractor who had failed to provide such a bond as he had covenanted in the construction contract. *Strong v. American Fence Constr. Co.*, 245 N.Y. 48, 156 N.E. 92, 94 (1927) (opinion by Cardoza, C.J.):

'Security to materialmen and laborers was the end and aim of the transaction. If the promise was not for them, it was without significance or reason.' Nor does the promise have to be for the sole benefit of the third party who is suing as long as it was 'for his direct or substantial benefit.' *Beck v. Reynolds Metals Co.*, 163 F.2d 870, 871 (7th Cir. 1947) (opinion by then Circuit Judge Minton, relying on Illinois cases).

Thus, we need to decide whether there was created a third-party beneficiary relationship for the materialmen, laborers, and other creditors so that they have rights under Illinois law, the creation flowing from the contract requirements that Parkhill, Inc., provide an affidavit of payment before receiving the retainage from Natural coupled with the provision that Natural could, if it so chose, pay any liquidated claims that arose out of the construction contract and charge Parkhill, Inc. Certainly the claimants are direct beneficiaries of the promise, and, although the promise may not have been solely for their benefit but also for the protection of Natural, it must have been substantially for their benefit since some of the specified creditors could not obtain liens against Natural's property, specifically, *e.g.*, the Government's claim for taxes. As noted above, a similar analysis has been applied to cases involving materialmen attempting to recover on a contractor's bond on a government job. See *Southwestern Portland Cement Co. v. Williams*, 32 N.M. 68, 251 P. 380 (1926); *Board of Education of City of Chicago v. Chicago Bonding and Surety Co., supra.*

\* \* \*

In any event, we are confident that if the Illinois courts had been confronted with the issue of priority of funds held as retainage, in part for the payment of subcontractors, laborers, and materialmen, an issue on which none of the parties has cited a controlling case, they would reach a similar conclusion. *Justice clearly compels such a result, especially when we note that the general contractor,*

*whose claim to the retainage fund in equity is by way of a claim of substantial performance, does not have clean hands relative to the claims of the unpaid subcontractors, materialmen, and laborers."* (Emphasis added.) 484 F.2d 692, 702-04.

■■ We concur in the court's language in *Avco* and hold that Marle was a third-party beneficiary of the contract between Canfield and General Paving.

■■ Bank argues that *Avco* does not apply because (1) it does not involve an assignment and (2) like General Paving, Marle is estopped. Both arguments must fail. The question of assignment is immaterial since no greater rights descended on Bank than on Canfield. (*Allis-Chalmers.*) All that we have already said concerning estoppel applies with like force in the case of Marle. In addition, once the contract was signed, Marle became endowed with vested rights. In *Pliley v. Phifer* (1954), 1 Ill. App. 2d 398, 407, 117 N.E.2d 678, 682, the court said:

"The courts in this State have consistently held that the third-party beneficiary obtains a vested right as against the promisor, and this right, once given, deprives the promisor of any interest or right in the subject matter of the promise, including the right to alter, rescind or revoke it; nothing remains except that the promisor carry out his promise to the third-party beneficiary. [Citations]."

Further, Bank's reliance on *Collom* is misplaced. That case proceeds on an equitable lien theory which we are not adjudicating here. Whether or not Marle might assert an equitable lien is irrelevant to our holding that it was a third-party beneficiary.

All parties have raised procedural questions to which, in view of our substantive holdings, we need not address ourselves. In brief, these questions are concerned with the propriety of the trial court's action on Bank's motion to dismiss. Apparently the motion sounded in section 48(l)(i) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(1)(i)), although the parties speak of "material issues of fact" which is a doctrine related to summary judgment under section 57 of the same statute. Both General Paving and Marle claim that it was error for the trial court to dispose of the case as a matter of law under whatever section for the reason that the garnishment act contemplates an evidentiary hearing (Ill. Rev. Stat. 1975, ch. 62, pars. 43(a), 42(a), 42(b)).

Since we have already held that General Paving was not estopped and that Marle was a third-party beneficiary, and thus the trial court's rulings on the law were erroneous, the procedural questions become moot.

■■■ We further conclude that garnishment is not the proper vehicle for the adjudication of this cause. In order for garnishment to lie, the indebtedness must be both liquidated and due without contingency. (*Wetten v. Horix* (1941), 309 Ill. App. 535, 33 N.E.2d 615.) Not every kind

of liability can be reached in garnishment. The remedy is purely statutory and must be strictly construed. *Powell v. Prudence Mutual Casualty Co.* (1967), 88 Ill. App. 2d 343, 232 N.E.2d 155.

In the case at bar the indebtedness is contingent; it is contingent upon the questions, to be resolved, of compliance with the affidavit/waiver provisions and of the claims of Marle as subcontractor-third-party-beneficiary.

Therefore, the garnishment judgment order of January 19, 1977, and the further order of May 5, 1977, denying reconsideration are reversed.

The cause is remanded to the circuit court of Sangamon County with directions to consolidate it with the pending action for accounting and to permit all parties to amend their pleadings in accordance with the views expressed in this opinion and to proceed with a full accounting of all claims not heretofore disposed of arising out of Canfield's contract with General Paving.

Reversed and remanded with directions.

REARDON, P. J., and CRAVEN, J., concur.