UNPUBLISHED

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

ROGER CAWIEZELL, d/b/a Cawiezell
Financial Services,
                    *Plaintiff-Appellant,*

v.

THE FRANKLIN LIFE INSURANCE
COMPANY, an Illinois corporation;
THE AMERICAN FRANKLIN LIFE
INSURANCE COMPANY, an Illinois
corporation,
                    *Defendants-Appellees.*

No. 99-2416

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-98-461-5-BR)

Argued: September 26, 2000

Decided: December 27, 2000

Before NIEMEYER and TRAXLER, Circuit Judges, and
Frederick P. STAMP, Jr., Chief United States District Judge
for the Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Richard William Farrell, FARRELL & LA MANTIA,
Raleigh, North Carolina, for Appellant. James L. Gale, SMITH,

HELMS, MULLISS & MOORE, L.L.P., Raleigh, North Carolina, for Appellees. **ON BRIEF:** Michael S. Yopp, FARRELL & LA MANTIA, Raleigh, North Carolina, for Appellant. Matthew W. Sawchak, Julia F. Youngman, SMITH, HELMS, MULLISS & MOORE, L.L.P., Raleigh, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Roger Cawiezell d/b/a Cawiezell Financial Services ("Cawiezell") sued Franklin Life Insurance Company and The American Franklin Life Insurance Company (collectively "Franklin") alleging that he had been wrongfully terminated from his employment as a regional manager for Franklin. Cawiezell's complaint alleges fraud, deceit, negligent and intentional misrepresentation, estoppel, waiver, ratification and laches, wrongful termination under the Illinois Franchise Disclosure Act, and violation of the North Carolina Unfair and Deceptive Trade Practice Act. Both Cawiezell and Franklin moved for summary judgment. The district court granted summary judgment in favor of Franklin holding: (1) Franklin did not violate the Illinois Franchise Disclosure Act by terminating Cawiezell's contract without good cause because that statute did not apply; (2) the implied duty of good faith cannot override the "at will" termination clause in the regional manager contract; (3) Cawiezell's claims in tort and equity fail because his wrongful termination allegations fail; (4) Cawiezell states no claim under the North Carolina Unfair and Deceptive Trade Practices Act because all disputes between the parties under the regional manager contract are governed by Illinois law. We affirm.

### I.

From 1975 to 1998, Roger Cawiezell served as regional manager for Franklin Life Insurance Company and The American Franklin

Life Insurance Company. Specifically, Cawiezell was regional manager of the "Pine State Region" which, by the end of his tenure at Franklin, covered all of North Carolina and several counties in South Carolina and Tennessee. As a regional manager, Cawiezell built, maintained, and administered a network of agents to sell Franklin life insurance policies and products throughout his region.

A series of written employment contracts governed the relationship between Cawiezell and Franklin. Cawiezell entered into a standard regional manager's contract in 1975. In 1980, 1985, and 1995, Cawiezell signed renewal regional manager contracts. The 1995 contract is representative of the employment relationship that existed between the parties during the 23 years Cawiezell was associated with Franklin.

The 1995 contract contained certain key provisions. First, Cawiezell was to work for Franklin as an independent contractor, not as an employee. J.A. 359 (§ 1(A)). Second, Cawiezell's authority as a Franklin agent was limited to "soliciting and procuring applications for insurance and related products by [Franklin]." *Id.* (§ 2(A)). Third, Cawiezell could not "make, alter, or discharge contracts on behalf of" Franklin. J.A. 360 (§ 2(D)). Fourth, Cawiezell was required to participate in various training programs as specified by Franklin. J.A. 361 (§ 3(F)). Fifth, termination of Cawiezell's employment was governed by the following clause:

> This contract may be terminated by either party *without cause*, by sending the other at last known address by mail, 30 days notice in writing to that effect, or by delivery of such notice in person. It is expressly understood by the parties that this contract may be *terminated at will by either party with or without cause*.

(emphasis added). J.A. 363 (§ 8(A)). Sixth, Illinois law governed the application and interpretation of the contract. J.A. 365 (§ 10).

In April 1997, Cawiezell began promoting pre-paid legal insurance ("PPL"), a product not offered by Franklin. On June 4, 1997, Cawiezell met with members of Franklin's management to encourage them to endorse the promotion of PPL through Franklin's national sales

network. Shortly thereafter, on June 24, 1997, Franklin wrote a letter to Cawiezell informing him that PPL "would not be the proper direction for our sales associates."

The parties give the June 24 letter different meanings. Franklin contends that the letter (along with other communications with Cawiezell) indicated that Cawiezell was to discontinue promotion of PPL through Franklin's sales network. Cawiezell, however, maintains that the letter did not expressly bar Cawiezell from selling PPL. Cawiezell interpreted his regional manager contract and his communications with Franklin officials to mean that his involvement with PPL was permissible, albeit unadvisable. Cawiezell also alleges that various decisions made by Franklin's management against the sale of PPL were not communicated to him.

On March 17, 1998, the chief executive officer of Franklin wrote a letter to Cawiezell criticizing his continued efforts to promote PPL through the Franklin sales network, and demanding that he come to Franklin's headquarters in Springfield, Illinois for an "expedited meeting . . . to explain how you will totally withdraw from your affiliation of pre-paid legal services in order for you to remain as a Regional Manager." The letter also repeated an earlier request that Cawiezell not attend an upcoming national meeting of regional managers. *Id*. On March 17, 1998, Cawiezell responded by letter to Franklin's chief executive officer, explaining that he understood from the June 4, 1997 meeting that Franklin had no interest in promoting PPL, but that he had never been given any verbal or written directive from Franklin's management indicating that he could not personally continue to handle PPL.

On April 3, 1998, the expedited meeting took place. According to members of Franklin's management, Cawiezell failed to present a satisfactory plan to terminate his promotion of PPL during the meeting and that he was fired at that meeting. On April 6, 1998, Franklin sent a letter to Cawiezell explaining that Franklin had terminated Cawiezell's regional manager contract.

Cawiezell then sued on grounds of wrongful termination. The district court granted summary judgment in favor of Franklin. On appeal, Cawiezell presented the following issues for review: (1) Whether the

district court erred in relying on the "at will" termination clause in the regional manager contract when it granted summary judgment in favor of Franklin on Cawiezell's tort and equity claims and refused to examine those claims individually; (2) Whether the district court erred when it refused to apply the implied covenant of good faith and fair dealing to this case; (3) Whether the district court erred when it concluded that Cawiezell's business did not constitute a franchise and that he may not take advantage of Illinois common law and public policy that permits a franchise to only be terminated for "good cause"; and (4) Whether the district court erred when it concluded that Cawiezell did not state a claim under the North Carolina Unfair and Deceptive Trade Practices Act.

## II.

This Court reviews a summary judgment *de novo*. *See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 123 (4th Cir. 1994). Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact, and in which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993). In making this determination, the Court draws all permissible inferences from the underlying facts in the light most favorable to the party opposing the motion. *See* Fed. R. Civ. P. 56(c).

## III.

### A.

Cawiezell contends that the district court erred when it granted summary judgment on his waiver, estoppel, ratification, laches, fraud, deceit, and misrepresentation claims. In the district court, Cawiezell argued that Franklin violated the Illinois Franchise Disclosure Act ("IFDA") by terminating his regional manager contract without good cause. The district court held that the IFDA did not apply to Cawiezell because his business was not located in Illinois. Cawiezell then

argued that his business was a franchise and that under Illinois common law and public policy, an implied covenant of good faith and fair dealing imposed a good cause requirement for termination upon Franklin. The district court rejected Cawiezell's argument because it found that Cawiezell's relationship to Franklin did not constitute a franchise. The district court then rejected Cawiezell's additional claims in tort and equity because it had already determined that under the express terms of the regional manager contract, Franklin did not have to provide a reason for terminating Cawiezell and that Cawiezell's termination could not have been improper under any standard set forth by Cawiezell.

Cawiezell now contends that the district court erred when it refused to examine his tort and equity claims individually. In support of his argument, Cawiezell offers two cases applying Illinois law as being contrary to the district court's holding: *Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*, 913 F. Supp. 1088 (N.D. Ill. 1995); *Carl A. Haas Auto Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381 (N.D. Ill. 1996). Each case involved a business relationship between a distributor and a manufacturer that was terminable at will. In each case, the manufacturer terminated the distributor and the distributor sued the manufacturer on various theories, including the implied covenant of fair dealing, fraud, equitable estoppel, and promissory estoppel. In each case, the district court found that the distributor's claims in tort and equity survived summary judgment, despite the existence of the "at will" termination provision in the governing contracts. Cawiezell submits these cases as proof that an "at will" clause does not bar all other claims in tort and equity that might arise out of his termination dispute.

Franklin responds, and this Court agrees, that the Illinois cases cited by Cawiezell do not undermine the district court's reasoning. The two cases relied upon by Cawiezell are distinguishable from this case because in those cases the parties had transformed their "at will" relationship into something else. In *Nichols*, the manufacturer contradicted the "at will" clause in the contract by expressly promising that his relationship with the distributor would not be terminated. *See Nichols*, 913 F. Supp. at 1142. Also in *Nichols*, the distributor's fraud claim survived summary judgment because the district court found that the distributor could have reasonably relied on the manufacturer's

rejection of an "at will" relationship. *See id.* at 1144. In *Carl A. Haas*, the manufacturer similarly contradicted the "at will" relationship by repeatedly assuring the distributor that their relationship would continue for a stated period. *See Carl A. Haas*, 933 F. Supp. at 1392. The manufacturer's direct assurances of a continuing relationship allowed the distributor's estoppel claim to survive a motion to dismiss. *See id.*

Cawiezell has not demonstrated to this Court that Franklin repudiated or altered the "at will" contract. As the court stated in *Jesperson v. Minnesota Mining and Manufacturing Company*, "no obligation can be implied which would be inconsistent with and destructive of the unfettered right to terminate at will." 681 N.E.2d 67, 71 (Ill. App. Ct. 1997), *aff'd*, 700 N.E.2d 1014 (Ill. 1998). Because Cawiezell has not offered evidence alleging that the status of his relationship with Franklin was anything more than an at will relationship, the district court's grant of summary judgment to Franklin is affirmed.

Even if Cawiezell's tort and equity claims were to be evaluated individually, they each could not survive summary judgment. Cawiezell argues that genuine issues of material fact remain regarding his fraud, deceit, and negligent and intentional misrepresentation claims. Cawiezell contends that Franklin's failure to inform Cawiezell of its disapproval of Cawiezell's involvement with PPL and failure to provide Cawiezell with the opportunity to withdraw from PPL was done in bad faith to essentially set up Cawiezell for failure. Cawiezell states that, had he known about Franklin's position on PPL, he would have discontinued promoting PPL. On June 24, 1997, Brady Creel, on behalf of Franklin, sent a letter to Cawiezell, which stated:

> Bob Gibbons, Bob Beuerlein, and I appreciate your taking time to visit us concerning the pre-paid legal organization. *After review of the materials, it is our position that this would not be the proper direction for our sales associates.* We feel the sales associate needs to be focused on selling insurance and financial services while building their agencies.

J.A. 413 (emphasis added). On March 17, 1998 Franklin sent a another letter to Cawiezell, threatening to terminate Cawiezell's business relationship with Franklin if he did not present a plan for discon-

tinuing PPL sales. Even drawing all inferences in favor of Cawiezell, a jury could not find that Franklin misrepresented to Cawiezell its position on PPL.

Cawiezell's claims of equitable estoppel, promissory estoppel, waiver, and ratification fail as well. Cawiezell claims that Franklin's failure to explain that he would be terminated for continuing to promote PPL should estop Franklin from terminating him under the "at will" termination provisions of his agreement. Franklin correctly points out that, in an equitable estoppel case based on silence, the plaintiff must show that the defendant has a duty to speak. *See Vail v. Northwestern Mut. Life Ins. Co.*, 61 N.E. 651, 652 (Ill. 1901); *Town & Country Bank v. James M. Canfield Contracting Co.*, 370 N.E.2d 630, 633 (Ill. App. Ct. 1977). Cawiezell has offered no evidence that the relationship between Franklin and Cawiezell amounted to a relationship requiring such a duty.

Cawiezell claims that the doctrine of promissory estoppel applies to his case because Franklin's March 17, 1998 letter amounted to an unequivocal promise that if Cawiezell explained at the expedited meeting how he would stop selling PPL, he would not be terminated. Cawiezell argues that he reasonably relied on Franklin's representation that it would refrain from firing him if he explained at that meeting whether he intended to withdraw from PPL and that he was never given that opportunity to explain. Franklin correctly argues in response that Cawiezell cannot invoke promissory estoppel because the March 17th letter did not contain a specified promise that Franklin would refrain from terminating Cawiezell without cause. Cawiezell's regional manager contract contains an at will provision, which can only be overridden by an express promise to only terminate him for cause or not at all. The March 17th letter did not state such a promise. In addition, Franklin contends that Cawiezell squandered his opportunity to explain how he planned to withdraw from PPL at the April 3, 1998 meeting by not assuring Franklin that his involvement in PPL had ended.

Cawiezell argues that Franklin waived any right it had to terminate Cawiezell under the "at will" provision of the contract because Cawiezell's failure to terminate his PPL involvement is directly attributable to Franklin's own action and concealment. However, as

Franklin notes correctly, § 9 of the 1995 regional manager contract provides that "[n]o act or forbearance . . . shall be construed as a waiver by [Franklin] of any rights whatsoever and they shall continue to be in full force and effect." J.A. 365. Non-waiver clauses are enforceable under Illinois law. *See Monarch Coaches, Inc. v. ITT Indus. Credit*, 818 F.2d 11, 13 (7th Cir. 1987). Thus, the waiver provision in the regional manager contract is dispositive of that issue.

In support of his ratification theory, Cawiezell argues that Franklin impliedly ratified Cawiezell's PPL sales because during the one-year period preceding Cawiezell's termination, Franklin did not directly inform him that he could not sell PPL. "The rationale behind the doctrine [of ratification] is that the person ratifying the action obtains a benefit through the person who is acting on his behalf." *Lydon v. Eagle Food Ctrs., Inc.*, 696 N.E.2d 1211, 1216 (Ill. App. Ct. 1998). Because Cawiezell has failed to prove that Franklin accepted and retained a benefit from Cawiezell's sale of PPL, Cawiezell's theory of ratification fails.

This Court concludes that Cawiezell's tort and equity claims have no merit and the district court properly granted summary judgment as to these claims.

B.

Cawiezell next argues that the district court failed to properly apply an implied covenant of good faith and fair dealing to this case. Cawiezell contends that the implied covenant should override the "at will" termination clause in his contract because Franklin's actions and misrepresentations caused him to reasonably expect that he would not be terminated for selling PPL. Cawiezell also asserts that he was not given a proper opportunity to withdraw from PPL. Cawiezell argues that the district court should have applied the implied covenant of good faith in order to vindicate Cawiezell's reasonable expectation that his PPL sales would not be grounds for termination.

Franklin cites several cases in response that support its proposition that the implied covenant of good faith cannot override the express terms of the "at will" clause. The most concise statement of this rule

is found in the Seventh's Circuit's opinion in *L.A.P.D., Inc. v. General Electric Corp.* which provides:

> The argument that an ambulatory duty of "good faith" displaces express provisions of contracts in Illinois (whose law governs the common-law claims) comes up frequently. More often than we care to recall, we have reminded litigants that "good faith" in contract law is a gap-filling approach designed for an issue "that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." . . . "While this obligation [to deal in good faith] exists in every contract in Illinois, it is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." . . . Litigants may not seek issues of "good faith" in lieu of abiding by explicit provisions of contracts.

132 F.3d 402, 404 (7th Cir. 1997) (citations omitted). Although Cawiezell does not cite any authority, he is correct in arguing that the purpose of the implied covenant of good faith is to protect the contracting parties' reasonable expectations. *See James v. Whirlpool Corp.*, 806 F. Supp. 835, 843 (E.D. Mo. 1992). However, as the district court properly noted, the contractual expectations of the parties in the case at hand were that either party could terminate the contract for any reason. The "at will" clause in the 1995 contract was unambiguous and the implied covenant of good faith may not displace it. In *Beraha v. Baxter Health Care Corporation*, the court observed that "several federal courts interpreting Illinois law have cogently reasoned that the covenant of good faith, which is a principle of construction, gives way to the rule that an employment at-will contract is terminable for any reason. Otherwise, the employment at-will principle would be meaningless." 956 F.2d 1436, 1444 (7th Cir. 1992). Thus, the district court's grant of summary judgment as to this issue was appropriate.

## C.

In the district court, Cawiezell also argued that Franklin violated section 705/19(a) of the Illinois Franchise Disclosure Act which

requires a "good cause" termination of any franchise located in Illinois. *See* 815 ILCS § 705/19 (1998). Because Cawiezell's business was located in North Carolina, the district court held that Cawiezell could not avail himself of the IFDA's "good cause" termination requirements. Recognizing that the IFDA provides no relief, Cawiezell now abandons that claim but, nevertheless, contends that the "good cause" standard should apply to his business both under Illinois common law and on public policy grounds.

Cawiezell relies on *Dayan v. McDonald's Corp.*, 466 N.E.2d 958 (Ill. App. Ct. 1984), to support his argument that, according to Illinois common law and public policy, "the implied covenant of good faith restricts franchisor discretion in terminating a franchise agreement to those cases where good cause exists." *Id.* at 973.

In order to succeed on this point, Cawiezell must first demonstrate that his business is a franchise. Section 3(1) of the IFDA establishes the definition of a "franchise." *See* 85 ILCS § 705/3(1). To show that he operated a franchise, Cawiezell must demonstrate:

> (1)  that he has been "granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system that the franchisor describes or suggests in substantial part; and"

> (2)  that "the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and"

> (3)  that "the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee of $500 or more . . . ."

815 ILCS § 705/3(1).* Cawiezell must satisfy all three of these ele-

---

*The district court used the IFDA definition of a franchise because in articulating Illinois' public policy with respect to franchises, the court in *Dayan* relied heavily on the legislature's expression of Illinois' public policy in the context of the IFDA.

ments to be considered a franchise. *See Vitauskas v. State Farm Mut. Auto. Ins. Co.*, 509 N.E.2d 1385, 1391 (Ill. App. Ct. 1987). The district court held that Cawiezell could not satisfy the first element of the franchise definition, because Cawiezell did not have "the right to engage in the business of offering, selling, or distributing Franklin products."

Under the regional manager contract, Cawiezell could only "solicit[ ] and procur[e] applications for insurance and related products issued by [Franklin]." J.A. 359 (§ 2(A)). Additionally, the contract provides that Franklin (not Cawiezell) has "the sole discretion to refuse to issue or amend a policy or application, or to modify or cease to issue any policy or type of policy." J.A. 361 (§ 4(A)). The agreement further provides that Cawiezell "has no authority except that which is expressly set forth in this contract and . . . is expressly forbidden to make, alter or discharge contracts on behalf of [Franklin]." J.A. 360 (§ 2(D)).

The district court properly concluded that Cawiezell could not sell, offer or distribute Franklin goods or services. The district court determined that Cawiezell could not sell insurance because all proposed sales were subject to Franklin's approval, and the contracts or policies that resulted from Cawiezell's solicitation were formed between Franklin and the policy owners. As the court stated in *Vitauskas*:

> The right to sell consists of an unqualified authorization to transfer a product at the point and moment of the agreement to sell or authority to commit a grantor to sell. The plaintiff did everything he could legally and responsibly do to effect a sale, but the sale could not be effective until approval of the defendant was forthcoming. Plaintiff could not commit the defendant to a binding contract of insurance. He could solicit an application for insurance, but he could not sell within the meaning of the IFDA.

*Vitkauskas*, 509 N.E.2d at 1391.

The district court also properly rejected Cawiezell's argument that he had the right to "offer" Franklin's goods and services. In order to arrive at this conclusion, the district court examined the definition of

"offer" as set forth in the *Restatement (2d) of Contracts* and Black's Law Dictionary. In both definitions an "offer" indicates that an acceptance will create a contract. For example, Black's Law Dictionary states that an offer is:

> A manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it . . . . The offer creates a power of acceptance permitting the offeree by accepting the offer to transform the offeror's promise into a contractual obligation.

Black's Law Dictionary 1081 (6th ed. 1990). Cawiezell could not offer Franklin products because an acceptance of the offer would create a contract, which is something that Cawiezell's employment contract expressly stated he did not have the authority to do.

Although Cawiezell points to one document which contains the words "Franklin's Franchise," J.A. 449, and to Franklin's Policies and Procedures, which state that "[a]gents are authorized to sell and recruit in their assigned regional territory," J.A. 371, as well as to the deposition testimony of William Simpson, Franklin's chief executive officer, in which he testified that agents are authorized to sell the products of Franklin, *see* J.A. 742-A, this Court cannot ignore the explicit language of Cawiezell's regional manager contract which states that the "[a]gent is not authorized and is expressly forbidden to make, alter, or discharge contracts on behalf of [Franklin]." J.A. 360 (§ 2(D)). The district court correctly concluded that Cawiezell's business was not a franchise and that he may not take advantage of Illinois public policy designed to benefit franchises. Therefore, the district court's grant of summary judgment as to this issue was proper.

## D.

Finally, the district court held that, because it had dismissed all of Cawiezell's other claims, none of these claims remained to provide a basis for Cawiezell's unfair trade practices claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). Additionally, in its order of February 10, 1999, the court ruled that because the regional manager contract designated Illinois law as the

law governing the contract, Cawiezell had to state a claim of unfair trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act. In this appeal, Cawiezell fails to challenge the court's order of February 10, 1999. He simply argues that since all of his other claims were improperly dismissed, the district court improperly rejected his NCUDTPA claim as well. In short, Cawiezell effectively abandons his NCUDTPA claims. Thus, the district court's grant of summary judgment as to this issue was proper.

*AFFIRMED*