Neenah Foundry Company, a Corporation, Plaintiff-Appellee, v. National Surety Corporation, a Corporation, Defendant-Appellant.
National Surety Corporation, a Corporation, Cross and Third Party Plaintiff-Appellant, v. Chesterfield Sewer & Water, Inc., a Corporation, Robert L. Wesson, et al., Cross and Third Party Defendant-Appellees.

Gen. No. 49,087.

First District, First Division.

March 30, 1964.

Dent, Hampton & Doten, of Chicago, for appellant.

Joseph J. Levin and Leonard J. Braver, of Chicago (Leonard J. Braver, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

In this action Neenah Foundry Company, materialman, plaintiff, sued defendants, Golden Valley Homes, Inc., owner, Chesterfield Sewer & Water, Inc., contractor, and National Surety Corporation, surety on contractor's bond, to recover $3,985 for materials alleged to have been furnished by plaintiff to the contractor and used in the construction of a sewer. Defendants, Chesterfield Sewer & Water, Inc., and Golden Valley Homes, Inc., were dismissed as parties defendant to plaintiff's action prior to trial. The cause proceeded to trial without a jury and judgment was entered for plaintiff against defendant, National Surety Corporation for $3,985, plus interest and costs from which judgment this appeal is taken.*

The record shows that defendants, owner and contractor, entered into a contract on July 29, 1959, whereby the latter would furnish material and labor for the construction of a sewer and water system in

---

* Defendant, National Surety Corporation, a corporation, filed a counterclaim against Chesterfield Sewer & Water, Inc., and a third party complaint against Robert L. Wesson, Lois Wesson, Louis J. Verive and Jany B. Verive, to recover a judgment over, plus attorney's fees under the terms of an application for bond, and a general indemnity agreement one or both of which were signed by the counterdefendant and third party defendants. Judgment over was entered in favor of National Surety Corporation in the amount of $3,985.00 plus attorney's fees of $750.00 against Chesterfield Sewer & Water, Inc., a counterdefendant, and against the third party defendants, Robert L. Wesson, Lois Wesson, Louis J. Verive and Jany B. Verive. There is no appeal from this judgment over.

428

Apple Orchard Subdivision. The contract provided under par 27:

> "[t]he contractor shall furnish owner with a surety performance bond for the work contracted for and for the payment of claims for labor performed and materials furnished in the amount of Two Hundred Twenty-five Thousand Eight Hundred Twenty and 35/100 ($225,820.35) Dollars. The surety on such bond shall be a duly authorized surety company satisfactory to the owner."

Thereafter, the defendant surety company executed a bond with the contractor as principal and the owner as obligee. The contract bond contains among other things this condition: "Now, therefore, the condition of the above obligation is such, That if the above bounden Principal shall well and truly keep, do and perform, each and every, all and singular, the matter and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage, which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void, otherwise to be and remain in full force and effect."

 The defendant, Surety Company first contends that since the bond does not name plaintiff, materialman, as an obligee or beneficiary and contains no promise for the benefit of third parties, that plaintiff acquired no rights under the bond and thus the trial judge was in error when he entered judgment in favor of plaintiff.

The defendant Surety argues that the bond executed by it was only for performance of the contractor and not a payment bond. It is conceded by the Surety

that their company executed its bond in connection with the contract entered into between the contractor and owner. The question for us is whether third parties who delivered materials to the contractor were protected within the meaning and benefit of the bond.

The general rule which governs the right of third parties not mentioned in a contractor's surety bond to sue upon such bond is a well settled one. The problems arise as particular fact situations are tested against the rather unyielding statement of the rule itself. In Carson Pirie Scott & Co. v. Parrett, 346 Ill 252, 178 NE 498 the Illinois Supreme Court stated the rule as follows:

> The rule is settled in this state that if a contract be entered into for a direct benefit of a third person not a party thereto, such third party may sue for breach thereof. The test is whether the benefit to the third party is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon. This rule has been announced without variation in numerous cases decided by this court. (Citing authorities.)

In order to determine whether the plaintiff derived a direct or incidental benefit from the surety agreement it is necessary to examine the terms of the construction contract which was specifically made a part of the surety agreement; the bond reading: ". . . which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein."

The contract agreement provides in part that the contractor agrees to furnish all material and labor for the construction of a sewer and water system in the Apple Orchard Subdivision and provides under par 19:

If evidence is produced before final settlement of all balances that the contractor has failed to pay the laborers employed on this work, or failed to pay for the material used therein, the owner, through its officials, may withhold such balances until the contractor shall have satisfied them that all such claims have been paid.

Under par 20:

The contractor further agrees that he will furnish the owner with satisfactory evidence that all persons who have done work or furnished material under this agreement and are entitled to a lien therefor under the laws of the State of Illinois have been fully paid or are no longer entitled to such lien.

This case arises out of the failure of the contractor to pay for materials furnished to him by plaintiff. Under these facts, the contractor could not produce a waiver of lien from the plaintiff and by the very words of clause 20 the Surety would be liable for claims arising out of this failure of its insured to complete the terms of the contract. But the appellant would argue that no matter what promises may have been made to the named promisee of the bond and no matter what rights of suit or compensation may lie as to promisee, the materialman is nowhere mentioned as a direct beneficiary of Surety's undertaking and therefore the Surety Company is not liable.

Defendant's contention fails upon a reading of sec 27 of the contract:

The contractor shall furnish owner with a surety performance bond for the work contracted for *and for the payment of claims for labor performed and materials furnished* . . .

The defendant asks us to hold that the phrase "and for the payment of claims for labor performed and

materials furnished" is mere surplusage adding nothing to the phrase "for the work contracted for." We however feel that this expression adds an additional obligation to the Surety's responsibilities. Here the Surety has promised to give a bond "for the work contracted for." This promise is sufficient to assure to the owner of the property all of the protections which would accrue to him from a normal performance bond. In addition, the Surety has agreed to provide coverage "for the payment of claims for labor performed and materials furnished." To whom is this promise made? We hold that this additional language is directed at the suppliers of labor and materials and that as such it assures a direct benefit to them which is actionable under the doctrine of the Carson Pirie Scott case. To hold otherwise would be to ignore the fact that in the contract which the Surety has agreed to accept, the type of bond there specified is required to assure two distinct performances.

Professor Corbin discusses these two distinct kinds of guarantees in his article in 38 Yale Law Journal 1. As Corbin says on page 15 of that article:

> The full performance is undoubtedly his (the owners) "leading object" of desire. This has caused many courts to say that he caused the execution of the bond for his own benefit and not for the benefit of third parties. Payment by the surety to the laborers and materialmen will also be economically beneficial to the promisee in those cases where these persons have power to put a lien upon the promisee's property. Payment will extinguish the power and prevent the lien. In procuring such a bond, therefore, the promisee may have been motivated by a desire for this result.

The article also goes on to mention various other reasons why a promisee of a surety bond might wish materialmen to be given the right of direct suit against the bonding company. Corbin suggests that such a guarantee of payment encourages materialmen of the best sort and tends to prevent the cutting off of supplies by materialmen who are not promptly paid or who suspect the financial reliability of the contractor. Thus the promisee has good reason to desire that a contractor's surety bond be drafted in such a way that its direct benefits accrue not only to him, but also to those materialmen upon whom the efficient and "lien free" completion of his project depends.

The Surety cites various cases in which Illinois Courts have held that a materialman not mentioned in either the bond or the contract did not have a right of direct suit against a surety. A review of those cases will however show that the language in each of them points to the promise of direct benefits only to the named promisees. In Searles v. City of Flora, 225 Ill 167, 80 NE 98 the words were: ". . . make good and reimburse to the above named obligee all loss and damage which said obligee may sustain by reason of failure or default." In City of Herrin v. Stein, 206 Ill App 339 the bond read, ". . . keep and save harmless the City of Herrin, against all claims, losses, demands, liabilities, suits, judgments, costs, damages and expenses." And in Fodge v. Board of Education of Oak Park, 309 Ill App 109, 32 NE2d 650 the determinative words were: ". . . fully indemnify and save harmless the Owner from all costs and damages which he may suffer by reason of any default, and shall fully reimburse and repay all outlay and expense which the owner may incur in making good such default."

Much reliance is placed by the Surety on the case of People v. Merkle, 269 Ill App 449. In Merkle the

Appellate Court held that under the language in that bond, the materialman could not maintain a suit on the bond for the amount of material he had furnished to the contractor. The contractor in Merkle was required to "furnish bond covering the faithful performance of the contract and the payment of all obligations arising thereunder." While it is true that the language in that case might be considered as somewhat similar to our bond in its scope, yet nowhere does the Merkle contract require a bond specifically *"for the payment of claims for . . . materials furnished,"* as in the instant case. (Emphasis supplied.)

Under our view of the case, after considering the terms of the contract and of the bond, the Surety if it desired to limit its liability to third persons could have done so in no uncertain terms. It is true as has often been stated, that in the case of a surety bond given to an owner to assure performance of a building contract, the legal duties of the surety ought not to be expanded beyond the terms of the surety's promise. He is paid for his undertaking; he is not paid for more than his undertaking. On the other hand the surety should not be allowed to free itself from its contractual obligations. A contract must be interpreted so as to give effect to the intention of the parties at the time the contract was made. 12 ILP Contracts, sec 212. We have concluded that the failure of the contractor (as principal bonded by the Surety) to fulfill his contractual obligation of payment for the materials delivered to him made the Surety liable to plaintiff under its bond. We feel that to hold otherwise would be to ignore or to render meaningless the words and provisions of the contract to which the Surety agreed to bind himself. The contractor under the terms of its contract agreed to and did furnish a surety bond to insure the payment of claims for materials furnished and the materialmen had a

right to rely on this representation even though they are not named individually in the bond.

 It is next contended by Surety that there is no evidence that plaintiff's materials were used on the bonded project. The record reveals that the only testimony offered to prove deliveries of the materials was the testimony of two witnesses offered by plaintiff.

Mr. Clare Powers testified that he had been plaintiff's employee for a period of over ten years and is now the vice president of the firm. He stated that "we are in the gray iron foundry business, we manufacture construction castings, municipal castings, which might be construed as manhole covers." He said that he dealt with a Bob Wesson of Chesterfield Sewer & Water, Inc., and that Wesson phoned for an order of 80 type R–1050 manhole frames and covers and for 13 type R–1757–A manhole covers and ordered the manufacture of these items. The witness further testified that the negotiation with Wesson was for the purchase of castings or manhole covers "to him or Golden Valley Homes in Bartlett, Illinois." The order form (exhibit 2) indicates shipment to defendant, care of Apple Orchard Subdivision, Bartlett, Illinois. Another witness testified that he is the office manager of plaintiff's company and in charge of their books of account. He stated that they sent monthly statements to Chesterfield showing payments due. He stated in answer to a question of where the deliveries were made—A. "[t]he delivery receipt shows the materials consigned to Chesterfield Sewer & Water Company. Apple Orchard Subdivision, Bartlett, Illinois." On cross-examination the witness testified that this was the first transaction they had with Chesterfield.

Plaintiff's evidence stands undenied and uncontradicted, defendant having offered no evidence. In our opinion the trial judge properly found from the evi-

435

dence that the plaintiff did in fact furnish materials in connection with Chesterfield's contract for the installation of the sewer and water system in Golden Valley Homes, Apple Orchard Subdivision.

For the foregoing reasons the judgment of the Municipal Court of Chicago is affirmed.

Affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.