In re T. BRADY MECHANICAL
SERVICES INC., Debtor.

T. BRADY MECHANICAL SERVICES
INC., Plaintiff,

v.

F.E. MORAN, INC., Maram Corp., Holian Insulation Company, Johnson Pipe & Supply Company, Baltimore Aircoil Company, Taft Contractors, Inc., M.G. Electric, G & O Thermal Supply Company, Reliance Insurance Company, Defendants.

Bankruptcy No. 90 B 12353.
Adv. No. 90 A 0881.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 1, 1991.

Charles J. Myler, Richard G. Larsen, Myler, Ruddy & McTavish, Aurora, Ill., for debtor/defendant (counsel with briefs).

Stephen T. Bobo, Towbin & Zazove, Ltd., Chicago, Ill., for G & O Thermal (counsel with briefs).

David R. Brown, River Forest, Ill., for Reliance Ins. (co-counsel with briefs).

Thomas A. Cengel, Pasquesi, Cengel & Pasquesi, Highland Park, Ill., for F.E. Moran, Inc. Co–Counsel for Reliance Insur. (counsel with briefs).

Margaret Anderson, Jennifer L. Sucher, Lord, Bissell & Brook, Chicago, Ill., for Baltimore Aircoil Co. (counsel with briefs).

Paul Lehner, Tyrrel J. Penn, Schuyler, Roche & Zwirner, Chicago, Ill., for Maram Corp. (counsel with briefs).

Steven Bright, Boehm & Pearlstein, Chicago, Ill., for American Nat'l Bank of Arlington Heights.

**560**

Mark L. Dressel, Morgan, Lanoff, Denniston & Madigan, Ltd., Chicago, Ill., for G & O Thermal Supply.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtor/Plaintiff is a contractor. Among the assets of this estate are the interest of the Debtor in a payment bond covering a construction project in which the Debtor did work and the rights to payment for that work. The Debtor and the issuer of the payment bond, Reliance Insurance Company, which is a named defendant, have moved for summary judgment declaring that only the Debtor has any right to payment on the bond, and that the Debtor's sub-contractors have no such right. One of those sub-contractors, G & O Thermal Supply Company, has moved for summary judgment declaring that it is covered by the bond. Another sub-contractor, Baltimore Aircoil ("BAC"), opposes the Debtor's and Reliance's motions, arguing that there are genuine issues of material fact.

If the Debtor and Reliance win, the Debtor will be paid the entire remaining balance due for the work and the sub-contractors will be left with claims against the estate.[1] If the sub-contractors win, they will be paid. This is a core matter under 28 U.S.C. § 157(b)(2).

The Court finds that there is no genuine issue of material fact and that motions of the Debtor and Reliance should be granted, while G & O's motion should be denied.

## BACKGROUND

James H. Anderson, Inc., was the principal mechanical contractor for the Downers Grove Office Building Project. Anderson refused to sign a sub-contract with the Debtor for piping until the Debtor obtained labor and material payment and performance bonds. Because the Debtor could not obtain such a bond on its own, it asked F.E. Moran, Inc., to be an accommodation party

to the bond. The Debtor paid Reliance Insurance Company for the bond directly; on November 29, 1988 F.E. Moran signed it as principal. All the work was performed by the Debtor pursuant to an oral contract with F.E. Moran. The Debtor used various sub-contractors, including BAC, G & O, and Maram Corp. F.E. Moran, however, has withheld payment to the Debtor until this Court determines which parties are covered under the bond.

The bond obligates F.E. Moran and Reliance to pay "claimants" up to $1,492,130. "Claimant" is defined in the bond as "one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, oil, gasoline, telephone services or rental of equipment directly applicable to the subcontract."

The question here is whether there is any legal theory under which the sub-contractors may recover on the bond. BAC advances five affirmative defenses as to why it is entitled to payment under the bond: 1) the provisions of the bond itself entitle the sub-contractors to payment; 2) the sub-contractors are the intended beneficiaries of the bond; 3) the Debtor and F.E. Moran entered into an agreement with the intent to protect the sub-contractors; 4) the bond creates a constructive trust of which the sub-contractors are the intended beneficiaries; and 5) the sub-contractors have equitable liens against the Debtor's assets. G & O makes similar arguments, and also states that the Debtor and F.E. Moran are joint venturers, and therefore under partnership law the sub-contractors are in privity with F.E. Moran.

## DISCUSSION

### A. *The Bond*

The bond itself does not entitle the sub-contractors to payment. The explicit language of the bond allows only a party

---

1. In separate proceedings, this Court will determine which, if any, of these sub-contractors have mechanic's liens under Illinois law.

having a "direct contract with the Principal" to be a claimant. F.E. Moran is the only principal. The Debtor is the only party that had a direct contract with F.E. Moran.

## B. *Joint Venture*

■ G & O alleges that the Debtor and F.E. Moran were joint venturers, and that therefore privity exists between F.E. Moran and the sub-contractors. However, even the case that G & O relies on shows that there was no joint venture. *Aigner v. Bell Helicopters, Inc.*, 86 F.R.D. 532 (N.D.Ill.1980), states that to establish a joint venture it is necessary that there be a contract (express or implied), a community of interests, the parties must have some right to direct and govern each other's conduct, profits and losses must be shared, and the parties must have a proprietary interest in the subject matter. G & O makes several assertions supporting its joint venture theory. First, "The Court can fairly imply [sic] that F.E. Moran and Brady controlled each other's actions to some degree," because F.E. Moran was liable on the contract while Brady did all they work. Second, profits and losses were shared because F.E. Moran would have been compensated for its role on future construction jobs.

These assertions do not establish the elements of a joint venture. The connection between the Debtor and F.E. Moran does not imply that they had the right to direct and govern each others' conduct. Nor does any future compensation for F.E. Moran on other jobs, if it could be shown, constitute a sharing of profits and losses.

## C. *Third Party or Intended Beneficiary*

■ The problem regarding the third party beneficiary argument was set out over 60 years ago in *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E. 498 (1931). "The rule is settled in this State that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to

him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon." The Illinois Supreme Court went on to explain that in doing such an analysis, "Each case must depend upon the intention of the parties as that intention is to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution." *Id.* at 258, 178 N.E. 498. Having said that, however, the court then appeared to withdraw from the "circumstances" approach. "This liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing cannot be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability." *Id.* "It is a cardinal rule of construction of written contracts that the court will look at the entire contract and construe it according to the intention of the parties as the same appears from the language of the instrument." *Id.* at 259, 178 N.E. 498.

More recent cases support the proposition that the court should not look beyond the bond itself. As in our situation, the bond in *Young v. General Insurance Co. of America*, 33 Ill.App.3d 119, 337 N.E.2d 739 (1975), limited rights to Transco and its successors. The court decided that nothing in the bond language was intended to benefit a third party directly. Indeed the court said, "the provision that no one other than Transco or its successors should be permitted to sue on it, leads to the opposite conclusion." *Id.* at 122, 337 N.E.2d 739.

*Board of Ed. v. Ockerlund*, 165 Ill. App.3d 439, 116 Ill.Dec. 505, 519 N.E.2d 95 (1988), is similar. There too the bond contained a clause limiting recovery to a specific party, and the court decided that, "Since the intent of the parties … is clearly set forth on the face of the bond, there is no need to search further for a contrary indication." *Id.* at 443, 116 Ill.Dec. 505, 519 N.E.2d 95. In *Board of Ed. v. Hartford Acc. & Ind. Co.*, 152 Ill.App.3d 745, 105 Ill.Dec. 715, 504 N.E.2d 1000 (1987),

which considered the question of whether a party was a third party beneficiary under a labor and material payment bond, the court said, "The intent to benefit must be directly indicated, and it is not enough that the benefit was incidental." *Id.* at 753, 105 Ill.Dec. 715, 504 N.E.2d 1000.

BAC distinguishes these cases in several ways. In *Young* and *Ockerlund* the bonds at issue were performance bonds, rather than material and labor payment bonds such as we are dealing with. But the courts' analyses were based upon principles of contract interpretation that do not change depending upon the type of bond. It is true, as BAC points out, that *Hartford* is distinguished on the facts, including the fact that the plaintiff in that case was protected under a separate performance bond. However, none of the distinctions BAC points to make the principles of contract interpretation enunciated in these cases less relevant here.

BAC also points us to *Neenah Foundry Co. v. National Surety Corp.*, 47 Ill. App.2d 427, 197 N.E.2d 744 (1964). In that case, the construction contract was explicitly made a part of the surety agreement. That contract, in turn, required the contractor to furnish the owner with a performance bond to cover the "payment of claims for labor performed and materials furnished." The court decided that that language made the suppliers of labor and materials direct beneficiaries. The *Neenah* court explicitly distinguished its situation from other cases in which the language in the bond itself limited benefits to specific promises only. *Id.* at 433, 197 N.E.2d 744. "The surety if it desired to limit its liability to third persons could have done so in no uncertain terms." *Id.* at 434, 197 N.E.2d 744. In the case before us the bond does limit its liability in no uncertain terms, and this case is like the cases *Neenah* took pains to distinguish.

BAC's main argument is that all the parties to the bond understood that F.E. Moran was only an accommodation party, that the Debtor was to perform all the work in question, that the Debtor paid for the bond, and that therefore "it can be inferred that the parties intended for those who supplied labor and material to the Debtor for work on that subcontract were to benefit from the Bond." Although such an inference may be, in fact, warranted, it would not overcome the rule clearly laid out in *Carson Pirie Scott* that, "Liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing cannot be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability." 346 Ill. at 258, 178 N.E. 498.

G & O also relies on *Avco Delta Corp. v. U.S.*, 484 F.2d 692 (7th Cir.1973), in which the court found that sub-contractors were third party beneficiaries of the general contract, which provided for a retainage. But, there is a key difference between *Avco* and this case. In *Avco* the construction contract expressed an intent to benefit the sub-contractors. It stipulated that the owner could withhold final payment to the extent of "any and all claims asserted against Company or contractor." 484 F.2d at 695. As G & O itself points out, in *Avco*, the construction contract was, in part, for the "direct and substantial benefit" of the materialmen and sub-contractors. In our case, on the other hand, the contract explicitly limited any benefit to parties with a direct contract with F.E. Moran.

D. *Equitable Arguments*

■ G & O refers to *In re Tonyan Construction Co.*, 28 B.R. 714 (Bkrtcy.N.D.Ill. 1983), in which the court impressed a constructive trust on contract funds for the benefit of sub-contractors. The debtor was a general contractor who had received lien waivers from its sub-contractors. It wrote checks to the sub-contractors, which were dishonored. The owner had deposited funds into the debtor's account, but those funds were seized by the debtor's bank as a set-off. The court imposed a constructive trust on the funds to the extent of the dishonored checks, explaining, "Those funds were released to Debtor for the specific purpose of paying the two sub-contrac-

tors to whom they were due and would not have been released but for the waivers of lien. Debtor was acting merely as a conduit for the funds." 28 B.R. at 724–725.

In comparing *Tonyan* to the case at bar, again we come back to the limiting language in the bond itself. Whereas in *Tonyan*, the owner provided the funds for the benefit of the sub-contractors, in our case the bond specifically prohibits payment to any party not having a direct contract with F.E. Moran. Considering facts that are not before us now, the Illinois Supreme Court said of contracts, "It is a general rule governing the construction of contracts that unless a contract is ambiguous, its meaning must be determined from the words used; and courts will not, because a more equitable result might be reached thereby, construe into the contract provisions that are not therein." *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*, 395 Ill. 429, 432, 70 N.E.2d 604 (1947).

As this Court has said, "equitable liens are treated with disfavor under bankruptcy law. A creditor who failed to take the steps necessary to perfect a security interest should not be provided with a favorable position by the Bankruptcy Court at the expense of other creditors who had no notice of that interest.... In a bankruptcy case, there is nothing equitable about taking money away from unsecured creditors and giving it to a creditor that failed to protect its own interests when it had a chance to do so." *In re Hendleman*, 91 B.R. 475, 476–77 (Bkrtcy.N.D.Ill.1988) (citations omitted). Although *Hendleman* dealt with different facts, the reasoning is applicable here. The defendants were not defenseless. The bond was issued long before they contracted with the Debtor. They could have reviewed its language. Furthermore, they had rights under the Illinois mechanic's lien statute. If they failed to use available means to protect themselves, that does not make it equitable for them to take money that would otherwise benefit the unsecured creditors.

For these reasons, the motions of the Debtor and Reliance Insurance Company will be granted and this Court will declare that the only entity covered by the bond is the Debtor. G & O's motion that the Court declare that it is entitled to recover under the bond will be denied.