64 P.3d 210

**AMERICAN CASUALTY COMPANY OF READING, PA, Plaintiff–Appellee,**

v.

**D.L. WITHERS CONSTRUCTION, L.C., an Arizona limited liability company, Defendant–Appellant.**

No. 1 CA–CV 02–0199.

Court of Appeals of Arizona, Division 1, Department B.

March 6, 2003.

Jones, Skelton & Hochuli, by James J. Osborne and Eileen Dennis GilBride, Phoenix, Attorneys for Plaintiff–Appellee.

Jennings, Haug & Cunningham, L.L.P., by D. Kim Lough, Phoenix, Attorneys for Defendant–Appellant.

## OPINION

HALL, Judge.

¶ 1 In this declaratory judgment action, the trial court granted summary judgment to American Casualty of Reading, Pennsylvania ("American Casualty") because the court determined that D.L. Withers Construction, L.C. ("Withers") was not a proper claimant under a labor and material payment bond issued by American Casualty. We affirm.

## BACKGROUND

¶ 2 The material facts are undisputed. Withers, the general contractor for the construction of Pinnacle High School, subcontracted the installation of the HVAC system to 1st Mechanical, Inc. of Arizona ("Mechanical"). Pursuant to the subcontract agreement, Mechanical agreed to furnish all labor, materials, and equipment necessary to completely install the HVAC system. As authorized by a boilerplate provision in the subcontract agreement, Withers required Mechanical to furnish a payment bond.[1]

¶ 3 In accordance with the subcontract agreement, Mechanical secured a subcontract labor and material payment bond from American Casualty that designated Withers as the obligee. The payment bond, which incorporated the subcontract agreement, provided:

> Principal [Mechanical] and Surety [American Casualty] hereby jointly and severally agree with Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. Obligee shall not be liable for the payment of any costs or expenses of any such suit.

The payment bond defined "claimant" as "one having a direct contract with [Mechanical] for labor, material, or both, used or reasonably required for use in the performance of the contract[.]"

¶ 4 When Mechanical fell behind schedule, Withers instructed Mechanical in writing to properly staff the project site, informing Mechanical that if it "is unable or unwilling to comply immediately, D.L. Withers Construction will assist your firm in completing [the] work[.]" After a job site meeting at which it was agreed that Withers would assist Mechanical by supplying necessary additional labor to expedite the work, Withers contracted with Midstate Mechanical ("Midstate") to complete the HVAC system.

¶ 5 Thereafter, American Casualty filed a declaratory judgment action seeking a determination that Withers was not a proper claimant under the payment bond for its payments to Midstate. Withers answered that American Casualty was estopped from denying Withers' status as a claimant because Withers had given American Casualty notice of hiring Midstate to provide labor to Mechanical for installation of the HVAC system. Withers also filed a counterclaim alleging that the payment bond entitled it to recover the sums it paid to Midstate because the subcontract and job site agreements con-

---

1. This requirement was set forth on a "Continuation Page" of the subcontract agreement that set forth the specific job requirements, including the requirement that Mechanical "PROMPTLY FUR-NISH A 100% ~~PERFORMANCE AND~~ PAYMENT BOND." The change was initialed by the president of Mechanical.

stituted "direct contracts" with Mechanical for labor reasonably required for use in the performance of the contract pursuant to the terms of the payment bond.

¶ 6 The parties filed motions and cross-motions for summary judgment on the issue of whether Withers could seek payment as a "claimant" under the payment bond notwithstanding its status as obligee. The trial court granted American Casualty's cross-motion for summary judgment, ruling that "[a]n obligee under a labor and material payment bond is not entitled to payments for labor and material where the obligee completes the contract after the [sub]contractor's default." Withers timely appealed.

## DISCUSSION

¶ 7 The dispositive issue in this case is whether Withers, the obligee under the payment bond, may also institute a lawsuit as a bond claimant and recover the sums it paid for labor pursuant to its contract with Midstate. We review de novo issues involving contract interpretation. *Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, 192, ¶ 29, 33 P.3d 518, 526 (App. 2001). We construe provisions in payment bonds in the same manner as other contracts, according to their plain and ordinary meaning. *See Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, ¶ 11, 13 P.3d 785, 788 (App.2000).

¶ 8 Generally, a payment bond protects the obligee from claims by the principal's unpaid laborers or suppliers. *See Ayers Enters., Ltd. v. Exterior Designing, Inc.*, 829 F.Supp. 1330, 1333 (N.D.Ga.1993) ("[P]ayment bonds are intended to protect laborers and materialmen rather than the obligee of the bond."); 11 George J. Couch & Lee R. Russ, *Couch on Insurance* § 163:10, at 163–21 (3d ed. 1998) ("The purpose of a payment bond or provision is to protect the [obligee] . . . against the claims of unpaid subcontractors or suppliers[.]"). In contrast, a performance bond indemnifies the obligee for the principal's failure to fully perform the contracted work. *See L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 109–11 (5th Cir.1994); 11 *Couch on Insurance* § 163:10, at 163–20.

¶ 9 Nonetheless, we agree with Withers' contention that the classification of a bond as either a "performance" bond or a "payment" bond does not determine who may make a claim against the bond. *See, e.g., Davis Wallbridge, Inc. v. Aetna Cas. & Sur. Co.*, 103 A.D.2d 1010, 478 N.Y.S.2d 389, 390 (A.D. 4 Dept.1984) ("[I]n all events, it is the language employed in the bond which determines the beneficiaries."). However, the three cases relied upon by Withers to establish the duality of a bond, *Webb v. Crane Co.*, 52 Ariz. 299, 80 P.2d 698 (1938); *Ill–Mo Contractors, Inc. v. Aalcan Demolition & Contracting Co.*, 431 S.W.2d 165 (Mo.1968); and *Neenah Foundry Co. v. Nat'l Sur. Corp.*, 47 Ill.App.2d 427, 197 N.E.2d 744 (1964), are all distinguishable. These cases involved performance bonds containing language purporting to benefit laborers and materialmen. *Webb*, 52 Ariz. at 310, 80 P.2d at 704 (bond required principal to pay for all labor performed and was therefore given "for the protection of those who labored or furnished material"); *Ill–Mo Contractors, Inc.*, 431 S.W.2d at 168 (bond incorporated the subcontract agreement, which required the contractor (principal) to pay for all materials); *Neenah Foundry Co.*, 197 N.E.2d at 746 (bond incorporated the subcontract agreement, which provided: "The contractor shall furnish owner with a surety performance bond for the work contracted for *and for the payment of claims for labor performed and materials furnished.*"). Here, however, the language of the payment bond cannot reasonably be construed to serve the dual function of a performance bond because the language does not purport to address Mechanical's failure to perform the subcontract agreement, only its failure to pay laborers and materialmen.

¶ 10 Nor can the payment bond's definition of "claimant" be reasonably construed to mean Withers. A claimant under the bond is one "having a direct contract with [Mechanical] for labor, material, or both, used or reasonably required for use in the performance of the contract." Not only did Withers not have such a contract, it had the opposite of such a contract. Under the sub-

contract agreement, Mechanical was to supply Withers with labor and material for the HVAC system. Section 33.1.2 of the subcontract agreement provided that, in the event of Mechanical's breach, Withers could elect as one of several remedies to "[a]ssist" Mechanical by "securing any labor, materials, equipment, services, etc. [sic] for the prosecution and completion of the Work." Withers argues that, because the payment bond incorporated the subcontract agreement, which included this remedy, Withers had a "direct contract" with Mechanical to supply labor for use in the performance of the contract, thus entitling it to be treated as a claimant under the payment bond. We disagree.

¶ 11 In *Southwood Builders, Inc. v. Peerless Insurance Co.*, 235 Va. 164, 366 S.E.2d 104, 109 (1988), the Virginia Supreme Court construed the same definition of claimant contained in American Casualty's payment bond. In *Southwood*, the subcontractor (United) could not afford to hire another crew to ensure that its work would be completed on schedule. *Id.* at 105. Consequently, the general contractor (Southwood) and United agreed that Southwood would pay for an additional crew hired by United and deduct the expense from United's progress payments. *Id.* at 105–06. In affirming the judgment of the trial court dismissing the suit on other grounds, the court also concluded that Southwood was not a proper claimant: [T]he payment bond was designed to protect a claimant as defined in the bond, which included only those having "a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract." Southwood had no such relationship with United. Southwood was United's general contractor. Southwood did not supply labor

or materials to United. In essence, Southwood lent money to United[,] which United used to pay for labor and materials. *Id.* at 109.

¶ 12 Although the circumstances in the present case are somewhat different because Withers contracted directly with Midstate, we agree with the court's reasoning in *Southwood* and conclude that under the plain and ordinary meaning of American Casualty's payment bond, Withers did not have a direct contract with Mechanical for Withers to supply labor or material to Mechanical. Neither the subcontractor agreement nor the job site agreement transformed Withers into a supplier of labor or material to Mechanical. Although we can imagine scenarios in which Withers might successfully make a claim under the payment bond, *e.g.*, as a subrogee to the rights of a materialman or laborer, Withers' contractual right to secure additional labor for the project in the event of Mechanical's breach was not a direct contract for labor or material.

## CONCLUSION

¶ 13 Because Withers did not have a direct contract with Mechanical for labor, the trial court did not err in finding that Withers was not a "claimant" under the terms of the payment bond.[2] Accordingly, we affirm.

CONCURRING: JOHN C. GEMMILL and ANN A. SCOTT TIMMER, Judges.

---

2. Because we conclude that Withers is not a "claimant" covered by the payment bond, we need not address its argument that the trial court erred by determining that Mechanical "defaulted" under the subcontract contract.